## SCOFIELD, Collector of Internal Revenue, v. LE TULLE.

### No. 8948.

Circuit Court of Appeals, Fifth Circuit.

April 3, 1939.

Rehearing Denied April 27, 1939.

Helen R. Carloss, Sewall Key, and Lester L. Gibson, Sp. Assts. to Atty. Gen., and Jas. W. Morris, Asst. Atty. Gen., and W. R. Smith, Jr., U. S. Atty. and H. W. Moursund, Asst. U. S. Atty., both of San Antonio, Tex., for appellant.

Homer L. Bruce, of Houston, Tex., for appellee.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

V. L. LeTulle was compelled by the Collector of Internal Revenue to pay additional income taxes for the year 1931 assessed against himself and wife in community who as sole stockholders received in distribution all the assets of Gulf Coast Irrigation Company, which was dissolved Nov. 18, 1931, after having sold all its

property and business to Gulf Coast Water Company on Nov. 4, 1931. The sale transaction the Commissioner thought realized a taxable gain to the Irrigation Company, and he held that the LeTulles owed the tax as transferees of the corporate assets, and that they themselves realized taxable gains by the distribution of the assets in liquidation. LeTulle (his wife being deceased leaving him her representative and heir) contended the transactions were an untaxed reorganization of the Irrigation Company, sought refund of the additional taxes paid, and then sued the Collector in the District Court; where on a trial before the judge without jury he obtained judgment for $110,234, with interest and cost.

The Collector appealing contends there was no untaxed reorganization of the Irrigation Company, but a gain-realizing sale camouflaged to escape taxation; and that the court erred in not granting him time to show that the contract of sale on Nov. 4, 1931, which purported to be a reorganization, was really the consummation of one made with another purchaser a year previous, and transferred, which did not purport to be a reorganization.

The purchasing corporation, Gulf Coast Water Company, was owned by interests wholly apart from the LeTulles, and was organized for the purpose of making this purchase. It apparently had little capital, and found difficulty in making the cash payment. The contract of Nov. 4, 1931, stated that the Irrigation Company desired to reorganize its interests by transferring them to the Water Company for cash and the securities of the Water Company, and that LeTulle desired to reorganize his interest in the properties of the Irrigation Company so they would be represented by said cash and securities, and that all three joined in a plan of reorganization. In consideration of $25,000 cash, and $25,000 to be paid on executing a conveyance, and bonds of the Water Company in a sum of $750,000, bearing 6% annual interest, $150,000 payable on or before Jany. 1, 1933, and the remainder $50,000 per year beginning Jany. 1, 1933, all to be delivered to the Irrigation Company, it was to convey to the Water Company by warranty deed extensive irrigation properties and business fully described. The bonds were to be secured by mortgage on the property and the Water Company was to have the option within nine months from Jany. 1, 1932, of taking up the $600,000 longer term bonds for

$500,000 and interest. The shorter term bonds were further secured on the profits of operation of the business by a pledge of the net water rents. Neither LeTulle nor the Irrigation Company were to engage in the water business in named counties for thirty years. The conveyance, cash and bonds were delivered on Nov. 17, 1931. The Irrigation Company dissolved Nov. 18, 1931, and paid over the proceeds of sale to LeTulle as sole stockholder. He collected during 1931 on the first maturing bonds $76,648. It does not clearly appear what has been paid since. The court found the short term bonds had a market value of 100 and the others of 75.

■ A sale of its property by a corporation for money or securities having a market value in excess of the cost of the property ordinarily realizes a taxable gain; as does the receipt by a stockholder of liquidating dividends in excess of his investment in his stock. The tax laws except from this general rule the case of the reorganization or merger of a corporation, and the immediate distribution to its stockholders in pursuance of a plan of reorganization of the proceeds. Rev.Act of 1928, Sect. 112(b) (4), (d) (1), 26 U.S.C.A. § 112(b) (4), (d) (1). In such a case it is considered that there is no real sale, and the stockholder has not finally realized on his stock investment, but will owe a tax on his potential gain only when he realizes it by sale or collection of the new securities received. For it is characteristic of reorganizations that the purchaser's stock or other securities are received for the corporate properties, and receipt of these only is protected from present taxation. What transactions are to be considered reorganizations has been defined by the statute, Sect. 112(i), 26 U.S.C.A. § 112 note. The part of it applicable here reads: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)." Since the Water Company here acquired substantially all the properties of the Irrigation Company, there was a merger of the latter, according to the literal language. But it is settled that pure sales of substantially all of a corporation's property are not to be included, so that where the consideration paid for all the

properties was half cash and the other half short term well-secured notes there was not a merger but a sale. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428. This doctrine was reaffirmed and developed in Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284, but since about half the consideration there paid was in common stock of the purchasing company it was thought there was retained by the seller a substantial stake in the enterprise so that it would be a merger under the statute rather than a pure sale. So also in Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 274, 80 L.Ed. 281, where the selling corporation received preferred stock in the buying corporation it was held there was a statutory reorganization by merger, since the seller retained "a definite and a substantial interest in the affairs of the purchasing corporation", though having no voting rights. The quoted words constitute, we think, the test. Long time notes or bonds of the purchasing corporation may, like preferred stock, represent a definite and substantial interest in the purchaser's affairs.[1] The judge was justified in finding they did here. The cash paid was hardly more than a year's interest. The maker of the bonds had no independent financial strength. The security for them was only the property which was sold. If the affairs of the new company should prosper, the bonds would be paid, perhaps anticipated. If not, the seller would most likely only get its property back. There was a very substantial interest in the affairs of the purchasing corporation retained, —enough to make the words of the statute applicable, and to relieve the transaction as a reorganization from present full taxation.

There was no error in refusing postponement of the trial to secure evidence that the contract of Nov. 4, 1931, was really the consummation of a contract of sale on similar terms to another which did not call itself a reorganization. The evidence would not have changed the result. Whether there was a reorganization depends on the things named in the statute and not on what the parties recite as to their intentions. The material terms of the old contract were the same as the new one.

We find a reason for reversing the judgment which has not been argued. It is stated in the contract of Nov. 4, 1931, that the Irrigation Company was then "the owner of certain pumping plants, intakes, machinery, canals * * * and prior to the conveyance hereinafter called for * * will be the owner of certain other lands and irrigation properties, all of which said property to be conveyed shall be more particularly described, etc." On Nov. 7, 1931, a meeting of the stockholders of the Irrigation Company was held at which the capital stock of the Company was increased from $100,000 to $266,000. The entire increase was thereupon subscribed for by LeTulle, and paid for in property conveyed to the Company at a price of $166,-000. The stockholders meeting then ratified the contract of Nov. 4, 1931, and authorized the conveyance of all its properties and business accordingly. The evidence thus plainly shows that a large part of the property conveyed under the contract of Nov. 4, 1931, was not at that date owned by the Irrigation Company but by LeTulle, and that he conveyed it to his company by the device above stated in order to transfer it to the purchaser along with the property of the Irrigation Company. The statute makes no provision for the "reorganization" of an individual. The "plan of reorganization" which the Irrigation Company and LeTulle signed with the Water Company operated as a reorganization of the Irrigation Company, but the property of LeTulle which was embraced in it was simply sold by him. Using the Irrigation Company as a conduit for passing the title does not alter the substance of the matter. Only so much of the consideration as represents the price of the properties and business of the Irrigation Company is entitled to be protected from taxation as arising from a reorganization. It does not appear what the proper apportionment is. The burden was upon LeTulle to show not

---

[1] In Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289, it was said that long term bonds were securities and not the equivalent of cash as the short term notes were held to be in the Pinellas Ice Company case. But the Watts case did not arise under the clause of the statute about acquiring substantially all of the properties of another corporation, but concerned the preceding clause about acquiring a majority of the stock. It did not really matter whether the bonds received were the equivalent of cash or not, as all the stock was acquired, which by itself made a reorganization.

only that he had been illegally taxed, but how much of what was collected from him was illegal. The latter he did not do. The evidence does not support the judgment for the full amount paid by him. It is accordingly reversed, that further proceedings may be had consistent herewith.

Reversed and remanded.