RHODES v. COMMISSIONER OF INTERNAL REVENUE.

No. 4594.

Circuit Court of Appeals, Fourth Circuit.

April 10, 1940.

[black redaction bars]

Theodore B. Benson, of Washington, D. C. (Charles E. Foster, Jr., of Washington, D. C., on the brief), for petitioner.

Lee A. Jackson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

This is a petition to review a decision of the Board of Tax Appeals entered August 4, 1939, determining a deficiency in individual income tax for the calendar year 1933. So far as they are pertinent, the facts of the case may be briefly stated as follows:

The petitioner, Fred B. Rhodes, is now, and was during the tax year 1933, a practicing attorney in the District of Columbia. In 1932, he purchased certain real estate on 13th Street in the City of Washington. During the year 1933, petitioner was a shareholder in, and the President of, the Fidelity Building & Loan Association, a corporation organized under the laws of the District of Columbia. The Building & Loan Association moved into the 13th Street property in August, 1932, and continued to occupy it as a place of business throughout that year and the year 1933 and into the year 1934. Its board of trustees adopted the following resolutions on the dates indicated:

January 30, 1933: "On motion duly made and seconded, the Association was authorized to accept by deed properties at 610 Thirteenth Street, N.W., and at 431 Eleventh Street, S.W., and the board was authorized to appraise said properties for such amount as said properties shall be carried on the books of the Association."

July 17, 1933: "On motion duly made and seconded, and in supplement to motion adopted on January 30, 1933, the Association was authorized to accept from Fred B. Rhodes by deed property at 610 Thirteenth Street, N. W., with the understanding that unless an agreement be reached as to price on said property within two years of the date of this resolution, said property be deeded back to Fred B. Rhodes without cost or obligation to either party."

January 12, 1934:

"Whereas, under date of July 17, 1933, at a regular meeting of the board of trustees of the Fidelity Building & Loan Association, a resolution was unanimously passed, authorizing the Association to accept a deed from Fred B. Rhodes, president of the Fidelity Building & Loan Association, for property 610 Thirteenth Street, N. W., the property being carried in the name of Ruth S. Horner, at a price to be mutually agreed upon, and

"Whereas, the board of trustees, individually examined and appraised said property and determined that the price of One hundred and thirty-eight thousand dollars ($138,000.00) was a fair and reasonable price for said property, and that it would be a profitable purchase for the Association to make at said price, and

"Whereas, the said Fred B. Rhodes agreed to accept said price, less Eighty-one thousand dollars ($81,000.00) the property to be sold subject to an existing trust in that sum, and

"Whereas, in pursuance of said determination the said The Fidelity Building & Loan Association did take up the said building on its books on the 22d day of July, 1933, at the said sum so specified.

"Be it resolved, That the Board of Trustees hereby approves the purchase of said building as of July 20, 1933, at the price designated, and ratifies the action of the Association in placing said building upon its books at the price of said purchase."

The Board of Tax Appeals found that the property was deeded to the Building & Loan Association on April 6, 1933, though no entry was made on its books until July 22, 1933, at which time the property was set up on its books at a value of $138,000, the account of petitioner was credited with the sum of $57,000, and the Association assumed a deed of trust on the property securing $81,000. Of the $57,000, $21,000 was made available to petitioner in 1933 and the remainder in 1934. Petitioner reported the sale of this property in his return for the year 1933, and did not contend otherwise before the Board of Tax Appeals. There was no issue before the Board as to the date of the sale, but in considering another issue the Board did find as a fact that the sale of the real estate took place on July 20th or 22nd, 1933. Petitioner here, for the first time, contends that this sale was not consummated until

the passage of the resolution of January 12, 1934, and that the Board's action in determining that the gain or profit realized from the sale of the property was taxable to petitioner as a part of his income for the year 1933, was erroneous. Respondent objects to the consideration of this contention here because no such issue was made before the Board of Tax Appeals.

We will consider this contention first. It is to be noted that here petitioner seeks to raise a new question of law and fact, not raised before the Commissioner° or the Board of Tax Appeals, for the purpose of securing a reversal of the decision of the Board of Tax Appeals. Under such circumstances, upon the question of whether or not petitioner may now raise this issue for the first time in this court, we think that this court is bound by the decisions in General Utilities, etc., Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154, Helvering v. Salvage, 297 U.S. 106, 56 S. Ct. 375, 80 L.Ed. 511, and Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. —, decided February 26, 1940.

In the case of General Utilities etc., Co. v. Helvering, supra, it was held that in reviewing a decision of the Board of Tax Appeals, the Circuit Court of Appeals may not sustain an assessment over the Board's decision upon a ground which was not presented to the Board nor in the petition for review; that the taxpayer is entitled to know with fair certainty the basis of the claim against him. The Commissioner appealed from the Board of Tax Appeals and stated only one ground for review in his petition. Later, the Commissioner urged reversal on another ground. The Circuit Court of Appeals, 4 Cir., 74 F.2d 972, sustained the Board on the first ground, and although the second ground had not been raised before the Board, the Circuit Court of Appeals thought this point should be ruled upon. On appeal, the Supreme Court said, (296 U.S. page 206, 56 S.Ct. page 187, 80 L.Ed. 154): "The second ground of objection, although sustained by the court, was not presented to or ruled upon by the Board. The petition for review relied wholly upon the first point; and, in the circumstances, we think the court should have considered no other. Always a taxpayer is entitled to know with fair certainty the basis of the claim against him. Stipulations concerning facts and any other evidence properly are accommodated to issues adequately raised."

The judgment of the Circuit Court of Appeals was reversed.

In Helvering v. Salvage, supra, the court said (297 U.S. page 109, 56 S.Ct. page 377, 80 L.Ed. 511): "The defense of estoppel was not before the Board. Under what we regard as the correct practice, General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154, * * * the court should have passed the point. Furthermore, the facts disclosed give it no support."

In Helvering v. Wood, supra, which seems to be the latest pronouncement on this subject, the court said [60 S.Ct. 553]: "For a wholly different reason, petitioner's argument based on § 22(a) must fail. The Board of Tax Appeals purported to place its decision solely on § 166 and § 167 of the Act, 26 U.S.C.A. §§ 166, 167. Petitioner in his assignments of error specifically mentioned only § 166 and § 167, not § 22(a). In his brief before the Circuit Court of Appeals petitioner expressly waived reliance upon any section other than § 166. Though petitioner in his petition for certiorari relied on § 22(a), respondent in opposition thereto took the position that that point was not available to petitioner here as it was not raised below. In view of these facts, especially the express waiver below, we do not think that petitioner should be allowed to add here for the first time another string to his bow. As we have indicated, the issues under § 166 and § 22(a) are not coterminous. Though both deal with concepts of ownership, the range of inquiry under the latter is broad, under the former confined. To open here for the first time and in face of the express disclaimer an inquiry into the broader field is not only to deprive this Court of the assistance of a decision below but to permit a shift to ground which the taxpayer had every reason to think was abandoned in the earlier stages of this litigation. See Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 418, 53 S. Ct. 198, 77 L.Ed. 399. It is not apparent why a less strict rule is necessary in order adequately to protect the revenue."

█ The authorities cited above seem clearly and positively to enunciate the rule that an appellant may not raise an issue for the first time in an appellate court for the purpose of reversing an adverse decision of the Board of Tax Appeals.

There is another rule which seems to be equally well defined, which apparently the

petitioner here has confused with the rule above stated. For the sake of clarity, and in order to distinguish the two, it might be well to state this latter rule and cite the authorities sustaining it.

■ This latter rule seems to be that an *appellee* may urge, or the appellate court on its own motion may consider, any theory, argument or reason, *in support of a decision* of a lower court or Board, irrespective of whether or not such theory, argument or reason, was relied upon, or even considered by or suggested to the court below. Amongst others, the following authorities support this rule:

Dickey v. Burnet, 8 Cir., 56 F.2d 917, 918: "* * * The petitioners complain of the reasons given by the Board as the basis of its decision, and also of its findings with respect to the reasonable value of clay. It is, however, of no importance what reasons the Board gives for its decision if the decision is correct. Hughes v. Commissioner (C.C.A.), 38 F.2d 755."

Helvering v. Rankin, 295 U.S. 123, 132, 133, 55 S.Ct. 732, 736, 79 L.Ed. 1343: "There is nothing in the opinion of the Board to indicate that its decision was based upon the 'theory' stated by the court. There is nothing in the record to indicate that any such contention had been made by the government before the Board; and Turner's petition for review by the Court of Appeals did not claim that the Board had acted upon that 'theory.' But even if the Board's decision had been based on an erroneous rule of law, that would not have justified its reversal, if the findings of fact, governed by the correct rule of law, were sufficient to sustain the decision and had substantial support in the evidence."

Helvering v. Gowran, 302 U.S. 238, 245, 246, 58 S.Ct. 154, 157, 82 L.Ed. 224:

"Third. Gowran contends here that the government should not have been permitted by the Court of Appeals to argue its 'basis of zero' theory, because that theory raised an issue not pleaded, tried, argued, or otherwise referred to in the proceedings before the Board. It is true that the theory was first presented by the Commissioner in the Court of Appeals. But it does not appear by the record that objection to the consideration of this theory was made below. The only objection made there, as disclosed by the opinion, was 'that the Board was without jurisdiction to decide the case upon a point not urged by the commissioner.' As to that objection, the court, after stating that the only questions submitted are those of law, said: 'The Board approved the Commissioner's assessment, but did so upon a legal theory different from his. We are of the opinion that the Board acted within its powers. * * It is immaterial whether the Commissioner proceeded upon the wrong theory. The burden is upon the petitioner to show that the assessment is wrong, upon any proper theory; otherwise he must fail.'

"In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason. Frey & Son v. Cudahy Packing Co., 256 U.S. 208, 41 S. Ct. 451, 65 L.Ed. 892; United States v. American Ry. Express Co. 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087; United States v. Holt State Bank, 270 U.S. 49, 56, 46 S. Ct. 197, 199, 70 L.Ed. 465; Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L. Ed. 520; Stelos Co. v. Hosiery Motor-Mend Corp., 295 U.S. 237, 239, 55 S.Ct. 746, 79 L.Ed. 1414; cf. United States v. Williams, 278 U.S. 255, 49 S.Ct. 97, 73 L. Ed. 314. This applies also to the review of decisions of the Board of Tax Appeals. Helvering v. Rankin, 295 U.S. 123, 132, 133, 55 S.Ct. 732, 736, 79 L.Ed. 1343; cf. General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 187, 80 L.Ed. 154. The taxpayer sought review of the Board's decision by the Court of Appeals. The ultimate question before that court was whether, upon the facts stipulated, the Board had erred in affirming the Commissioner's determination that the additional taxes were due. If the Commissioner was right in his determination, the Board properly affirmed it, even if the reasons which he had assigned were wrong. And, likewise, if the Commissioner's determination was right, the Board's affirmance of it should have been sustained by the Court of Appeals, even if the Board gave a wrong reason for its action. By this rule the government was entitled to urge in the Court of Appeals that on the undisputed facts the Board's decision was correct because of the 'basis of zero' theory. And since that court rejected the theory, the government was entitled to assert its contention here. Nothing in General Utilities & Operating Co. v. Helvering, supra, or in Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511, is opposed to such procedure."

Clifford v. Helvering, 8 Cir., 105 F.2d 586, page 591. In this case the court said, "This question was not passed upon by the Board of Tax Appeals, but it may nevertheless properly be urged here. Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L. Ed. 224; Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Dickey v. Burnet, 8 Cir., 56 F.2d 917."

This statement considered alone, would seem to controvert the rule of law first herein stated and supported by General Utilities &c. Co. v. Helvering, supra. However, this is not correct, because in this case the "question" referred to in the above quotation was a contention made by the appellee in support of the decision of the Board of Tax Appeals. Therefore, the statement is in accord with the other authorities here cited.

This case went to the Supreme Court on writ of certiorari, and an opinion was rendered under the style of Helvering v. Clifford, 60 S.Ct. 554, 84 L.Ed. ——, on February 26, 1940, the decision being to reverse the Circuit Court of Appeals upon the merits, no mention being made of the question here under consideration.

It is to be noted that, in the interests of fairness and justice, the rule here under consideration is subject to one important qualification, and that is, that if the new issue or theory advanced in the appellate court to support the decision of the lower court involves any new question of fact, the case should be sent back to the lower court so that the adverse party may have the opportunity to establish any facts which might affect the result. Helvering v. Gowran, supra, 302 U.S. page 247, 58 S.Ct. 154, 82 L.Ed. 224.

The case of LeTulle v. Scofield, decided Jan. 2, 1940, 308 U.S. 415, 60 S.Ct. 313, 315, 84 L. Ed. ——, cited by petitioner in his memorandum, is not in conflict with the authorities cited above. It is true that the Circuit Court of Appeals, 5 Cir., 103 F.2d 20, 22, in speaking of the decision of the District Court, said: "We find a reason for reversing the judgment which has not been argued." The Supreme Court said: "We find it unnecessary to consider petitioner's contention that the Circuit Court of Appeals erred in deciding the case on a ground not raised by the pleadings, not before the trial court, not suggested or argued in the Circuit Court of Appeals, and one as to which the petitioner had never had the opportunity to present his

evidence, since we are of opinion that the transaction did not amount to a reorganization and that, therefore, the petitioner cannot complain, as the judgment must be affirmed on the ground that no tax-free reorganization was effected within the meaning of the statute."

The question, of whether or not a "tax-free reorganization" had been effected, had been fully litigated below. Therefore, this decision is certainly no authority in support of the action of the Circuit Court of Appeals, in reversing the judgment below upon a reason which had not been argued, and it is significant that the Supreme Court said (308 U.S. 415, 60 S.Ct. page 314, 84 L.Ed. ——): "We took this case because the petition for certiorari alleged that the Circuit Court of Appeals had based its decision on a point not presented or argued by the litigants, which the petitioner had never had an opportunity to meet by the production of evidence."

To summarize as to the question of whether petitioner here may rely upon his contention that the sale of the real estate mentioned in his petition did not take place in the year 1933; inasmuch as this is an issue of law and fact which was not raised before the Board of Tax Appeals and is a contention made for the purpose of reversing the Board, we hold that it cannot be considered by this Court.

And even if this Court could consider it on its merits, a somewhat more than cursory examination of petitioner's statements of fact and authorities cited leads us to the conclusion that the same result would follow if full consideration should be given to petitioner's contention in this regard.

Coming to the petitioner's second and last contention, it appears that petitioner during the year 1933 paid, in connection with the operation of the six branches of the Fidelity Building & Loan Association, in salaries, rent, interest on mortgages, and general expenses, the aggregate sum of $35,156.72. Before the Board of Tax Appeals petitioner claimed this sum as a deduction as a business expense from his earnings as an attorney, or that it was repaid to him in the purchase price of the real estate on 13th Street, and in the latter event that the profit realized from the sale of the real estate should be diminished by that amount. The Board held that this amount was not deductible as a business expense, and petitioner does **not**

58

here complain of this holding. However, he does insist that it should be deducted from the amount of his profit from the sale of the real estate, which the Board refused to do, and relies principally upon the following resolution of the Association's board of trustees adopted March 6, 1936; more than two years after the conclusion of the transaction:

·"On motion duly made and seconded, the following resolution was adopted with reference to resolution approved by the Board on January 12, 1934:

"Resolved,·That as a part of the consideration in the acceptance by the board of trustees of the offer of Fred B. Rhodes for the purchase of property known as 610 Thirteenth Street, N. W., it was understood ·and agreed that the said Fred B. Rhodes waives all claim as he may have, either legal or moral, as to any and all expenses paid by him for or on behalf of the Association during the year 1933."

But the Board had before it also the following evidence: Petitioner himself wrote in a statement to one Boland, Special Agent, F. B. I.: "During the year 1933 in order to enable the Association to operate without restricting its loaning capacity I paid practically all of the expenses of the Association in a sum aggregating some $25,000.00 without obligation on the part of the Association to repay same. No part of this sum has been repaid to me by the Association."

The Treasurer of the Association, in a written statement to the same agent, said: "The Board viewed the payment of the major portion of the operating expenses of the main office and the branches of the Association during 1933 by Mr. Rhodes as a distinct personal contribution on his part which he made freely without the Association incurring any liability for them."

In a memorandum prepared for the same agent by the Secretary of the Association and a member of its Board of Trustees, it was said: "About the time the Association moved to its present quarters on Thirteenth Street, N. W., Mr. Rhodes was elected ·President of the institution. With his elevation to this office he personally assumed operating expenses of the Association in still greater amounts and always without any contractual obligations to the Association, either directly or indirectly. His financial contributions were always gratuitous."

Upon this evidence the Board held that petitioner was not justified in claiming the amount of these expenditures as a part of the consideration in the purchase of the real estate.

We think the Board's finding was amply justified by the evidence and was correct. Everything which took place up to the time of the resolution of March 6, 1936, negatives the idea that these expenditures had anything to do with the sale of the real estate, and petitioner and the board of trustees of the association of which he was president will not be allowed two years later to put an entirely new, and to the Federal revenue, expensive, construction on the transaction.

Therefore, for the reasons stated, the decision of the Board of Tax Appeals will be affirmed.

Affirmed.