## CHASE, JR., A MINOR, ETC. *v.* UNITED STATES.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 242.   Argued March 21, 22, 1921.—Decided April 11, 1921.

1. The cession made by the Omaha Indians through the treaties of 1854 and 1865, the provision made by the latter for assigning parcels, in the retained reservation, to members of the tribe in severalty, for the exclusive use of themselves, their heirs and descendants, the provisions made by the Act of 1882 (and the Act of 1893) for granting allotments in severalty in trust for 25 years and then in fee, and the further provision of the former act (not carried out) for conveying the unallotted residue of the reservation to the tribe in trust for a like period and then in fee discharged of the trust and of all charge and incumbrance whatsoever,—did not deprive Congress of the power to make other disposition of the unallotted reservation for the benefit of the Indians.   P. 6.   *United States* v. *Chase*, 245 U. S. 89; *Sizemore* v. *Brady*, 235 U. S. 441.
2. The right to obtain an allotment under the acts referred to was not a vested right as respects this power of Congress.   P. 7.
3. The Act of May 11, 1912, c. 121, 37 Stat. 111, by which the Secretary of the Interior was "authorized" to sell all the unallotted lands of the Omaha Reservation in parcels, with certain specific exceptions, covers the whole subject of the disposition of those lands and supersedes the earlier provisions, *supra*, for allotting them.   P. 8.

(1)

4. Even if this act should be construed as permissive rather than mandatory, the Secretary's refusal to allow further allotments because of it is an exercise of his discretion to reserve the land for disposition under it.  P. 8.

5. Whether a party defendant, upon reversal of a judgment in his favor, may introduce a new defense which was available on the former trial, is not a question of jurisdiction but of practice.  P. 9.

6. *Held*, that the courts below rightly permitted the United States to set up a statutory repeal at the second trial which was ignored at the first.  P. 10.

261 Fed. Rep. 833, affirmed.

APPEAL from a decree of the Circuit Court of Appeals, which affirmed a decree of the District Court dismissing the bill in a suit brought by the appellant against the United States for an adjudication of his membership in the Omaha Tribe of Indians with a right to select an allotment out of the lands of the Omaha Reservation. The facts are stated in the opinion.

See also the reports of the case in the court below, 238 Fed. Rep. 887; 261 Fed. Rep. 833; and *Gilpin* v. *United States*, 261 Fed. Rep. 841, s. c., *post*, 10.

*Mr. John Lee Webster*, with whom *Mr. Hiram Chase* was on the briefs, for appellant:

The federal court has jurisdiction of suits by persons of Indian blood claiming right to allotment of Indian lands.

The appellant was born into a right to allotment under the Act of 1882, as amended by the Act of 1893.  *Chase* v. *United States*, 238 Fed. Rep. 887, 890.

The United States cannot now shift its ground of defense.  Having relied at the first trial, and on the first appeal, upon the single proposition that the Act of 1893 repealed the Act of 1882, and thereby cut off the right to allotment, and having failed in that defense, it cannot, upon the second trial, abandon that defense and insist that the Act of May 11, 1912, repealed the Act of 1882. *Cromwell* v. *County of Sac*, 94 U. S. 351, 353; *Railway*

*Co.* v. *McCarthy,* 96 U. S. 258, 267, 268; *Davis* v. *Wakelee,* 156 U. S. 680, 689, 690; *Werlein* v. *New Orleans,* 177 U. S. 390; *Southern Cotton Oil Co.* v. *Shelton,* 220 Fed. Rep. 247, 256; *Smith* v. *Boston Elevated Ry. Co.,* 184 Fed. Rep. 387, 389; *Oakland Sugar Mill Co.* v. *Wolf Co.,* 118 Fed. Rep. 239, 248; *Brooks* v. *Laurent,* 98 Fed. Rep. 647, 655.

This doctrine of estoppel against changing the grounds of defense, or shifting positions, applies to the United States as well as to individuals. *United States* v. *California & Oregon Land Co.,* 192 U. S. 355; *Northern Pacific Ry. Co.* v. *Slaght,* 205 U. S. 122.

The Act of May 11, 1912, did not repeal the Act of 1882, or the amendatory Act of 1893. In any event, the Acts of 1882 and 1893, providing for allotments to members of the tribe, remain in full force, and continue to be operative until there shall be an actual sale of the lands. The Act of 1912 does not make reference to the other acts, and contains no repealing clause. The repealing clause in the original draft of the act was stricken out. It contains no words which, by their terms, take away the continuing right of allotment provided for in the other acts.

Repeals by implication are not favored.

The Secretary of the Interior has never taken any steps to sell, nor made any declaration that he intends to sell the lands of the Omaha Reservation, under the Act of 1912. The language of the act is neither directory nor mandatory; it only authorizes the Secretary to sell—a discretionary power.

The title in fee to the reservation, under § 8 of the Act of 1882, became vested in the Indian tribe, and a patent in fee should have been executed by the United States July 10, 1909. The United States has no interest or title in the lands of the reservation which the Secretary could sell or convey under the Act of 1912. The Act of 1912 is therefore of no force or effect. *Chase* v. *United States,* 238 Fed. Rep. 887, 890.

The fact that the United States neglected to perform a ministerial duty, to-wit, to issue the patent in fee to the tribe, did not reinvest the title in the United States nor give the United States a right to sell the lands.

The proviso in § 8 of the Act of 1882, by which the United States bound itself, at the expiration of the trust period, to convey the reservation by patent to said Omaha Tribe of Indians in fee discharged of said trust and free of all charges or incumbrances whatsoever, was a contractual obligation based upon ample consideration.

*Mr. Assistant Attorney General Garnett,* with whom *Mr. H. L. Underwood,* Special Assistant to the Attorney General, was on the brief, for the United States.

*Mr. Oscar C. Anderson,* with whom *Mr. Charles. J. Kappler* was on the brief, for the Omaha Tribe of Indians, by special leave of court.

MR. JUSTICE McKENNA delivered the opinion of the court.

Suit to adjudge Hiram Chase, Jr., a member of the Omaha Tribe of Indians and to have a right to select eighty acres for an allotment out of the lands of the Omaha Reservation, the selection having been denied by the Secretary of the Interior.

The right of selection depends upon the effect of certain treaties between the Omaha Tribe and the United States and certain acts of Congress.

The treaties were made in 1854 and in 1865, 10 Stat. 1043, 14 Stat. 667, and by them the Indians ceded certain lands to the United States and certain other lands were retained constituting the Reservation with which this suit is concerned and of which the lands sought to be allotted are a part.

It was expressed in the treaty of 1865 to be the desire of the Indians to abolish the tenure in common by which they held their lands and to acquire tracts in severalty of 160 acres to heads of families and 40 acres to each male person of 18 years and upwards; and it was provided that the whole of the lands so assigned or unassigned should constitute and be known as the Omaha Reservation.

The assignments were to be approved by the Secretary of the Interior, be evidenced by certificates, and be final and conclusive.

In execution of the purposes of the treaty, Congress passed an act in 1882 (22 Stat. 341) by which the Secretary was authorized to allot the portion of the reservation lying east of the Sioux City and Nebraska Railroad in severalty, to each head of a family a quarter section (160 acres); to each single person over 18, one-eighth of a section; to each orphan child under 18, one-eighth of a section; and to each other person under that age, one-sixteenth of a section. The issue of patents was provided for, the lands to be held in trust for 25 years for the sole use and benefit of the respective allottees. And it was provided (§ 8) that the residue of the lands should be patented to the tribe but held in trust for 25 years, and then to be conveyed in fee discharged of the trust. From these lands, however, it was provided that allotments should be made and patented to each Omaha child who might be born prior to the expiration of the 25-year trust period.

Under the act and prior to July 11, 1884, allotments were made to 954 members of the tribe and patents issued therefor. No patent was issued to the tribe as provided.

By the Indian Appropriation Act passed March 3, 1893, c. 209, 27 Stat. 630, and expressing itself to be an amendment to the Act of 1882, the Secretary of the Interior was authorized with consent of the Indian tribe to allot in severalty ". . . to each Indian woman and child of said tribe born since allotments of land were

made in severalty to the members thereof under the provisions of said act [1882], and now living, one-eighth of a section of the residue lands held by that tribe in common, instead of one-sixteenth of a section, as therein provided, and to allot in severalty to each allottee under said act, now living, who received only one-sixteenth of a section thereunder, an additional one-sixteenth of a section of such residue lands.  .  .  ."

Hiram Chase, Jr., was not born until after the Act of 1893 was passed, and the question is, whether he is entitled to an allotment under it? The Government contends to the negative, basing the contention upon an Act passed May 11, 1912, c. 121, 37 Stat. 111, which, it is the further contention, repealed the Act of 1893, and cut off the right of allotment.

The District Court yielded to the contention and dismissed the bill, and its decree was affirmed by the Circuit Court of Appeals. 261 Fed. Rep. 833.

Against this action of the courts appellant asserts error, and insists that it and the contention of the Government are based on an underestimate of his rights and upon a wrong construction of the Act of 1893.

First as to his rights. The contention is that appellant had a vested right to an allotment "under the treaties and acts of Congress as they existed at the time when" the allotment was "selected and claimed" and this whether the Act of 1912 repealed the Act of 1893 or was subordinate to or complementary of its provisions. In support of the contention appellant recites the various provisions of the treaty of 1865 and the Acts of 1882 and 1893 and insists that they are clear and direct investments of irrevocable rights in pursuance of "a contractual obligation based upon ample consideration." In specification the treaty of 1854 is adduced as having "ceded to the United States a portion of the Reservation described in Article I" and "by Article VI, individual Indians were to receive allot-

ments of lands." This purpose, is the further contention, was executed by the treaty of 1865 by which the Indians *"did 'cede, sell, and convey to the United States'"* a part of their Reservation, and among other provisions there was one, expressed in Article IV of the treaty, for allotments to be "for the exclusive use and benefit of themselves [the Indians], their heirs, and descendants."

Of the obligations thus incurred, it is the insistence, § 8 of the Act of 1882 was the fulfillment, and at the expiration of the trust period the Reservation (residue) was to be conveyed to the tribe "in fee discharged of said trust and free of all charge or incumbrance whatsoever" and that, therefore, the Act of 1912 which directed the sale of the unallotted lands of the Reservation was in contravention of the treaties and the rights to allotments thereunder and under the Acts of Congress of 1882 and 1893, *supra*.

The contention is one that has often been made in this court and rejected as often as made. *Gritts* v. *Fisher*, 224 U. S. 640; *Choate* v. *Trapp*, 224 U. S. 665; *Cherokee Nation* v. *Hitchcock*, 187 U. S. 294. In those cases the relation of the individual Indian to the tribal property is explained and also the power of Congress over that property and the tribes. In the recent case of *United States* v. *Chase*, 245 U. S. 89, we had occasion to consider the Reservation here involved and the effect of Article IV of the treaty of 1865 relied on by the appellant, and decided that its purpose was to do no "more than to individualize the existing tribal right of occupancy" and that it left "the fee in the United States" and left "the United States and the tribe free to take such measures for the ultimate and permanent disposal of the lands, including the fee, as might become essential or appropriate in view of changing conditions, the welfare of the Indians and the public interests."

The case dealt with assignments under Article IV, but

its principle necessarily applies to a mere right under the Act of 1882. *Lone Wolf* v. *Hitchcock*, 187 U. S. 557; *Sizemore* v. *Brady*, 235 U. S. 441; *Cherokee Intermarriage Cases*, 203 U. S. 76; *Wallace* v. *Adams*, 204 U. S. 415; *Stephens* v. *Cherokee Nation*, 174 U. S. 445.

The next contention of appellant is that he acquired a vested right under the Acts of 1882 and 1893 assuming the latter act did not repeal the other, and we are brought to the Act of 1912. By that act the Secretary is "authorized to cause to be surveyed, if necessary, and appraised, in such manner as he may direct, in tracts of forty acres each, or as nearly as to the Secretary may seem practicable, and, after such survey and appraisement, to sell and convey, in quantities not to exceed one hundred and sixty acres to any one purchaser, all the unallotted lands on the Omaha Indian Reservation, in the State of Nebraska, except such tracts as are hereinafter specifically reserved: *Provided*, That the said land shall be sold to the highest bidder under such regulations as the Secretary of the Interior may prescribe, but no part of said land shall be sold at less than the appraised value thereof. . . ." There is provision for the reservation from sale of certain tracts with which this case is not otherwise concerned except as it shows complete delegation of administration to the Secretary. Appellant's contention is that the act is neither directory nor mandatory; it is permissive only and has been, it is said, so construed by the Secretary. There are cases, however, that decide that an officer "authorized" is an officer commanded in a matter of public concern.[1] Besides, there are words of direction in the act and they are necessary to its purposes. But, if it

[1] *Anne Arundel County Commissioners* v. *Duckett*, 20 Md. 468; *Flynn* v. *Canton Co.*, 40 Md. 312, 319; *Magaha* v. *Hagerstown*, 95 Md. 62; *Rankin* v. *Buckman*, 9 Or. 253, 262; *Supervisors* v. *United States*, 4 Wall. 435; *Maryland* v. *Miller*, 194 Fed. Rep. 775; *United States* v. *Cornell Steamboat Co.*, 137 Fed. Rep. 455.

may be assumed there is a discretion in the Secretary, he has exercised it against the appellant by denying his right to an allotment, presumably in reservation of the land for sale as provided in the act. And a sale is provided for— a sale of the unallotted lands mentioned in § 8 of the Act of 1882, and all of them. We agree, therefore, with the Circuit Court of Appeals that the Act of 1912 "covers so completely the subject of the disposition" of those lands "that it must be held to have repealed that portion of the Act of 1882 which authorized allotments to Omaha children during the trust period." And, again quoting the Court of Appeals, "the Secretary of the Interior, of course, could not allot the unallotted lands under the Act of 1882, and also sell them under the Act of 1912; nor could he allot the unallotted lands and at the same time make the reservations which he is commanded to make by section 2 of the latter act. It is so plain that both acts cannot be carried out that it is unnecessary to discuss that question." It supersedes, therefore, that act though it contains no repealing words. *United States* v. *Tynen*, 11 Wall. 88; *King* v. *Cornell*, 106 U. S. 395; *The Paquete Habana*, 175 U. S. 677, 685.

This appeal is a review of the second trial of the case. In the first trial the District Court on motion of the United States dismissed the bill. Upon appeal the Circuit Court of Appeals reversed the District Court and remanded the case to that court "with instructions to permit the defendant [United States] to answer, if so advised." 238 Fed. Rep. 887.

Upon the return of the case the United States set up as a defense the Act of 1912 presenting the questions here involved.

Appellant contends that the United States "having relied at the first trial upon the single proposition that the Act of 1893 repealed the Act of 1882, and thereby cut off the right of these Indian claimants to allotments, and

having failed in that defense, cannot, upon the second trial, abandon that defense and insist that the Act of May 11, 1912, repealed the Act of 1882."

The proposition has a relevant and conclusive application when a judgment of a former action is pleaded but limited application when urged in the same suit, it expresses a practice only and useful as such, but not a limitation of power. *Messenger* v. *Anderson,* 225 U. S. 436.

The District Court and the Circuit Court of Appeals, having the power and exercising it, entertained the defense of the Act of 1912, estimated it and decided it conclusive against appellant's right to an allotment. As we have seen there was no error in that ruling, and the decree of the Circuit Court of Appeals is

*Affirmed.*