## WHITE v. HIGGINS et al.

### No. 3613.

Circuit Court of Appeals, First Circuit.

Dec. 12, 1940.

314

Edward First, Sp. Asst. to Atty. Gen. (J. Louis Monarch, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Edmund J. Brandon and C. Keefe Hurley, both of Boston, Mass., on the brief), for appellant.

Charles M. Rogerson, of Boston, Mass. (Roger W. Hardy, of Boston, Mass., on the brief), for appellees.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

These two actions, consolidated on appeal, were brought to recover back certain income taxes paid for the years 1924 to 1927. They involve identical issues—whether the income of certain trusts is taxable to the grantors under the applicable provisions of the Revenue Acts of 1924, 43 Stat. 253, and of 1926, 44 Stat. 9, 26 U. S.C.A. Int.Rev.Acts, pages 1 et seq., and 145 et seq. The litigation was here before. Higgins v. White, 1 Cir., 93 F.2d 357.

At various times during 1924–1926, inclusive, the appellee Clara C. Higgins created ten funded life insurance trusts to which she transferred securities. Each of the trusts so created also received a life insurance policy upon the life of Clara's husband, John W. Higgins, which had theretofore been applied for by him. Two of the policies were assigned by Mr. Higgins directly to the respective trusts, and the others were assigned by him to his wife who in turn assigned them to the respective trusts.

During the same period, 1924–1926, the appellee John W. Higgins created sixteen funded life insurance trusts to which he transferred securities. Each of the trusts so created also received a life insurance policy upon the life of Clara, which had been applied for by her. Three of these policies in which Mr. Higgins was originally named as absolute beneficiary were assigned by him directly to the respective trusts, and the other thirteen policies in which the estate of Clara C. Higgins was original beneficiary were assigned to their respective trusts by Mrs. Higgins alone, or jointly with her husband.

All twenty-six trusts are identical except for variations in the policies and securities delivered to the trustees and the dates of execution of the trust instruments.

The trustees named in the wife's trusts were Mrs. Higgins and the Boston Safe Deposit & Trust Company. The trustees named in the husband's trusts were Mr. Higgins and the same trust company. However, it was provided in Article Sixth of each of the trusts that the individual trustee by formal instrument "shall have full power and authority to remove any person who may from time to time be a Trustee hereunder, whether the Corporate

or the Individual Trustee, and to appoint another person in his, her or its place, to increase the number of the Trustees hereunder and to appoint additional Trustee or Trustees to fill the place or places so created and to reduce the number of Trustees." In Article Fifth it was provided that "Nothing hereinabove set forth shall be construed to require that there must be two Trustees." No trustee is liable for losses "unless such loss shall happen through his own wilful default."

Other provisions of the trust instruments may be summarized from a typical trust set up by Mrs. Higgins, as follows:

First: The trustees are directed, out of both principal and income of the property transferred to them, to pay the premiums upon the policy on the life of John W. Higgins.

Second: The trustees are empowered "in their sole uncontrolled discretion" to surrender the policy and receive the cash surrender value thereof or to convert the policy into a paid-up policy of life insurance.

Third: "Any funds in the hands of the Trustees which the Trustees shall deem not to be needed to pay premiums, together with any other property which may from time to time be received by them, shall, except as hereinafter provided, be held during the lifetime of John W. Higgins, in trust, to add the net income thereof to the principal and accumulate said net income, provided that if at any time during the continuance of this trust and during the lifetime of said John W. Higgins the Trustees shall deem it wise so to do they may use any of the funds in their hands specifically including the cash surrender value of said policy for the benefit of Clara C. Higgins and the issue of said John W. Higgins and Clara C. Higgins by paying out to her and them, or any one or more of them, such sums or sum out of the principal as they shall deem necessary or advisable, for the comfort, maintenance, support, advancement, education or welfare of said Clara C. Higgins and said issue or any or more of them, or they may surrender and assign said policy and the trust property held hereunder to said Clara C. Higgins, in which case this trust shall cease and determine."

Fourth: Upon the death of John W. Higgins the proceeds of the insurance policy received by the trustees, together with the other trust property, shall be held in trust for the following uses, namely:

"(a) For a period of three (3) years from the date of the death of John W. Higgins the trustees shall add the net income of the trust property to the principal and accumulate it, except as hereinafter provided. Upon the expiration of said period of three (3) years, the Trustees shall pay the entire trust property at that time in their hands to Clara C. Higgins, if she be living * * *", otherwise, the property is to be distributed to such of her issue, or the husband, wife, widow or widower of such issue, as she should by her last will appoint, and in default of appointment, to the issue of John and Clara living at that time by right of representation.

"(b) Notwithstanding the foregoing paragraph, the Trustees shall within said period of three (3) years, next following the death of said John W. Higgins, have full and absolute power in their own uncontrolled discretion to use the principal and income of the trust property, in whole or in part, in such a way and for such purposes as they shall think will most promote the best interests and welfare of said Clara C. Higgins or her appointees or the issue of said John W. Higgins and Clara C. Higgins or their appointees. Such sums may be paid directly to said Clara C. Higgins or to her appointees or to such issue or to their appointees or any or more of them, or may be directly paid by the Trustees in their own uncontrolled discretion."

Articles Fifth and Sixth have been referred to previously.

Seventh: The trustees are given broad powers of management, investment and reinvestment of the trust property. Any of the property may be sold, "at public or private sale without the decree of any court."

The trusts created by Mr. Higgins contain the same provisions, except for interchange of the names of the spouses.

The Commissioner ruled that the income of each of the trusts for the years in question was taxable to the respective grantors, appellees herein, and assessed additional income taxes upon them. The amounts so assessed were paid. Timely claims for refund were made and disallowed, and the present suits were brought within the time limited by the statute.

In each case the Collector filed a demurrer to the plaintiff's declaration in the following terms:

"Now comes the defendant in the above-entitled action and demurs to the plaintiff's declaration upon the ground that such declaration and the matter contained therein in the manner and form as therein set forth are not sufficient to constitute a cause of action for that it does not appear from the plaintiff's declaration that the income received by the trustees during the years 1924, 1925, 1926 and 1927 under the insurance trusts referred to in said declaration was not properly included in the plaintiff's gross income for said years under the provisions of Section 219(g) (h) of the Revenue Acts of 1924 and 1926."

The demurrers were sustained by the District Court and judgments rendered for the defendants. On appeal, we reversed the judgments of the District Court, 18 F.Supp. 986, and our mandates remanded the cases to that court "for further proceedings not inconsistent with the opinion passed down this day." Higgins v. White, 1 Cir., 93 F. 2d 357. The only question considered by us was that presented and argued, namely, whether the grantors were taxable under Section 219(g) or (h) of the Revenue Acts of 1924 and 1926.[1] We construed Article Third of the trust instrument, above quoted, as not conferring upon the trustees an absolute power to surrender the trust property to the grantor and thus terminate the trust, but rather as vesting in them a fiduciary power requiring a determination by the trustees that they deemed it necessary or advisable to use the principal for the comfort, maintenance, support, advancement, education or welfare of Clara C. Higgins or of any issue of her and John W. Higgins, or to surrender and assign the trust property to her. Since this was a power not vested in the grantor as grantor but only in herself as trustee, for so long as she remained a trustee, this court considered that the present was not a case "where the grantor * * * has * * * the power to revest [the corpus] in himself," within the meaning of Section 219(g). A similar conclusion was reached as to Section 219(h).

When the cases went back, the Collector filed an amended answer by consent, and the cases were heard by the District Court upon a stipulation of facts, without a jury. The stipulated facts, which have been summarized in this opinion, did not vary in any substantial particular from the facts as presented upon demurrer to the declarations in the previous appeal.

The Collector renewed his contentions under Section 219(g) and (h), but as to this the District Court was of course bound by our previous decision. The Collector also advanced, as a new contention, that the income of the trusts was taxable to the respective grantors under the basic income tax provision of Section 213(a) of the Revenue Acts of 1924 and 1926.[2] The District Court, 31 F.Supp. 796, 798, declined to consider this new theory of defense. It said:

"Notwithstanding the decision in Chase v. United States, 256 U.S. 1, 41 S.Ct. 417, 65 L.Ed. 801, holding as stated in the headnote that 'The court below, upon retrial fol-

---

[1] "(g) Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

"(h) Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him * * * such part of the income of the trust shall be included in computing the net income of the grantor." 43 Stat. 277, 44 Stat. 34, 26 U.S.C.A. Int.Rev.Acts, pages 31, 176.

(These sections of the two revenue acts were identical.)

[2] "(a) The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *" 43 Stat. 267, 44 Stat. 23, 26 U.S.C.A. Int.Rev.Acts, pages 19, 163.

(These sections of the two revenue acts were identical.)

lowing a reversal of its first judgment, *may* (italics added) entertain a defense not made on the first trial,' I think the practicable thing to do in the case at bar is to treat the decision of the Court of Appeals in the demurrers as decisive for the plaintiffs upon all the issues so far as the District Court is concerned."

Accordingly, judgment was given for the plaintiff in each case. From these judgments the Collector now appeals.

The first question to consider is whether we should upon this second appeal reconsider our previous decision on Section 219(g) and (h). The doctrine of "law of the case" is not an inexorable command. It "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Messinger v. Anderson, 225 U.S. 436, 444, 32 S. Ct. 739, 740, 56 L.Ed. 1152; Cochran v. M & M Transportation Co., 1 Cir., 110 F.2d 519, 521; Johnson v. Cadillac Motor Car Co., 2 Cir., 261 F. 878, 883-886, 8 A.L.R. 1023; Brown v. Gesellschaft Fur Drahtlose Telegraphie, 70 App.D.C. 94, 104 F.2d 227, 228; Luminous Unit Co. v. Freeman-Sweet Co., 7 Cir., 3 F.2d 577, 580. Though the power exists to reopen the points of law already decided, it is a power which will necessarily be exercised sparingly, and only in a clear instance of previous error, to prevent a manifest injustice. The doctrine of law of the case is normally a salutary one in the interest of economy of effort and of narrowing down the issues in successive stages of litigation. In the absence of exceptional circumstances, it would be unfortunate if on second appeal counsel felt free to argue de novo as a matter of course the points decided on previous appeal. See Great Western Telegraph Co. v. Burnham, 162 U.S. 339, 343, 344, 16 S.Ct. 850, 40 L. Ed. 991.

When the doctrine of law of the case is being invoked in an intermediate appellate court, such as the Circuit Court of Appeals, another consideration enters. After we affirm a judgment on the ground that our decision on an earlier appeal has become the law of the case, the Supreme Court is nevertheless free to take the case on certiorari and reverse our judgment. Panama Railroad Co. v. Napier Shipping Co., 166 U.S. 280, 284, 17 S.Ct. 572, 41 L. Ed. 1004. The Supreme Court frequently does so. Western Union Telegraph Co. v. Czizek, 264 U.S. 281, 44 S.Ct. 328, 68 L.Ed. 682, reversing, 9 Cir., 286 F. 478; American Surety Co. v. Greek Catholic Union, 284 U. S. 563, 52 S.Ct. 235, 76 L.Ed. 490, reversing, 3 Cir., 51 F.2d 1050; Illinois Central R. R. Co. v. Crail, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699, 67 A.L.R. 1423, reversing, 8 Cir., 31 F.2d 111. Sometimes it does so even where application for certiorari to review our earlier judgment had been applied for and denied. Burnet v. J. Rogers Flannery & Co., 286 U.S. 524, 52 S.Ct. 497, 76 L.Ed. 1268, reversing, 3 Cir., 54 F.2d 365. Our law of the case is not the Supreme Court's law of the case. Our judgment on the second appeal stands or falls on its merits and has no improved standing before the Supreme Court from the fact that it resulted from an application of our law of the case. This being so, it would seem that if on second appeal we thought our earlier opinion was erroneous, we ought sensibly to set ourselves right, rather than to invite reversal above. But mere doubt on our part is not enough to open up the point for full reconsideration. Often when the decision is originally rendered we have doubts enough. We do the best we can, make our decision and pass on to something else.

In the cases at bar, this court, as presently constituted, does doubt the correctness of our previous construction of Section 219(g). Considering the practical purposes of taxation, the subsection might well be read, not as requiring that the power to revest be in the grantor as grantor, but as being satisfied where the individual who is the grantor has the practical power to restore the corpus to himself. Where that individual has this power in his capacity as trustee, the vague standard in the trust instrument governing his exercise of fiduciary judgment constitutes little hindrance to him if he wants to get the property back. See Cox v. Commissioner, 10 Cir., 110 F.2d 934, 936, certiorari denied, October 14, 1940, 61 S.Ct. 26, 85 L.Ed. ——; Rollins v. Helvering, 8 Cir., 92 F.2d 390, certiorari denied, 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592. Cf. Commissioner v. Morton, 7 Cir., 108 F.2d 1005. If the question comes to us again in a new case we shall feel free to re-examine it.

But the question was fully and fairly presented to this court on the earlier appeal; the facts were simple and not in dispute; we overlooked no controlling authority; and there has been no intervening decision of the Supreme Court ruling the other way. The point is of shrunken im-

portance, from the standpoint of the revenue, because since the enactment of the Revenue Act of 1932 the income of a trust like those in the cases at bar will clearly be taxable to the grantor. Section 166 of the act, 26 U.S.C.A. Int.Rev.Acts, page 543, corresponding to old Section 219(g), now provides for taxation to the grantor not only where the power to revest is in the grantor as such, either alone or in conjunction with any person not having a substantial adverse interest, but also where such power is vested "in any person not having a substantial adverse interest" which would, of course, include a trustee. Moreover, the income of a trust like those here involved would clearly be taxable to the grantor today under Section 167, 26 U.S.C.A. Int. Rev.Acts, page 543, as income which is "held or accumulated for future distribution to the grantor." Cf. Sawtell v. Commissioner, 1 Cir., 82 F.2d 221, 223.

Under these circumstances we shall adhere to our earlier decision on Section 219 as the law of the case.

Appellees next press a technical objection to our consideration of Section 213 on the present appeal.

█ The earlier appeal was from judgments for the Collector rendered by the District Court on the ground taken in the demurrers to the complaints, namely, that the income was taxable to the grantors under Section 219. While the applicability of Section 213 was not raised below or argued before this court, it is quite true that we could have considered this section of the law in order to see whether the judgments below should be affirmed as correct in result though rested on an erroneous reason. An appellee may urge, or the appellate court on its own motion may consider, any theory, argument or reason in support of a decision of a lower tribunal whether or not such theory, argument or reason was relied upon, or even considered by or suggested to the court below. LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355; Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct 154, 82 L.Ed. 224; Rhodes v. Commissioner, 4 Cir., 111 F.2d 53, 56; In re Schwartz, 2 Cir., 89 F.2d 172, 173.

█ What we might have done is one thing. What we did do is another. Section 213 was not called to our attention, and

our opinion did not consider it—which is not surprising, for that was over a year before the decision in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, opened up new vistas of tax liability. The mandate of this court merely remanded the case for further proceedings not inconsistent with our opinion. Thereafter the District Court permitted the Collector to file an answer[3] and the case came on to be heard again, this time on stipulated facts. Subject to our mandate, which merely foreclosed the reconsideration of Section 219 as a defense, the District Court at that stage was obliged to give judgment according to law; and if under Section 213 as applied to the stipulated facts the income of the trust was taxable to the grantors, judgment should have been given for the Collector. See Chase, Jr., v. United States, 256 U.S. 1, 41 S.Ct. 417, 65 L.Ed. 801; Mutual Life Insurance Co. v. Hill, 193 U. S. 551, 553, 554, 24 S.Ct. 538, 48 L.Ed. 788; Davis v. Crane, 8 Cir., 12 F.2d 355; Balch v. Haas, 8 Cir., 73 F. 974, 976, 977.

Chase, Jr., v. United States, supra, is particularly in point. The plaintiff instituted suit for a decree allotting to him certain land on an Indian reservation. The United States moved to dismiss the bill on the ground that its allegations were not sufficient to constitute a cause of action. This motion was sustained and the District Court dismissed the bill, upon the ground that the Act of August 7, 1882, 22 Stat. 341, under which the plaintiff claimed, had been repealed by the Act of March 3, 1893, 27 Stat. 612, 630,—the sole contention advanced by the defendant at that time. Upon appeal, the Circuit Court of Appeals, confining itself to this one question, which was the only one argued by counsel, held that the complaint set forth a cause of action, reversed the decree below and remanded the case to the District Court "with instructions to permit the defendant to answer, if so advised." 8 Cir., 238 F. 887, 894. Thereafter, the defendant filed an answer which advanced the contention that the Act of May 11, 1912, 37 Stat. 111, repealed the Act of 1882 so far as the right of the plaintiff to an allotment was concerned. After a trial on the merits, a decree dismissing the suit was entered, and the plaintiff appealed. The Circuit Court of Appeals held that this new contention of the defendant, under the Act of 1912, was

---

[3] Whether the District Court was obliged to permit the Collector to file an amended pleading is not now in question; the amendment in fact was allowed "by consent."

well taken, and affirmed the decree. 8 Cir., 261 F. 833. Specifically the court considered that the contention as to the effect of the Act of 1912 was open to the defendant upon retrial of the case, despite the fact that the Circuit Court of Appeals upon the former appeal might, if it had thought about it, have affirmed the decree of the District Court upon a different ground from that taken below. Its reversal of that earlier decree decided only what the court purported to decide, namely, that the plaintiff's complaint was not bad for anything appearing in the Act of 1893; it did not become the law of the case that the plaintiff's rights under the Act of 1882 were also unaffected by the Act of 1912. This, despite the fact that the motion to dismiss was characterized as a "general demurrer". 261 F. at 839. Nor was the United States estopped from setting up the new defense by the fact that the Department of Justice was fully advised of the Act of 1912 at the time of the first trial and failed to advance any contention with reference thereto. "To hold that, if counsel does not raise all the questions of law on the first appeal, he may not thereafter raise any new questions of law, would be a very severe rule. There may have been a change of counsel, and many other matters which caused the failure to raise all the applicable questions of law. The question now raised is not inconsistent with but simply an additional reason why the act of 1882 could not be relied upon by appellant as giving him an allotment." 261 F. at 840.

Upon appeal to the Supreme Court [256 U.S. 1, 41 S.Ct. 419, 65 L.Ed. 801], Chase contended again that the United States "having relied at the first trial upon the single proposition that the Act of 1893 repealed the Act of 1882 and thereby cut off the right of these Indian claimants to allotments, and having failed in that defense, cannot, upon the second trial, abandon that defense and insist that the Act of May 11, 1912, repealed the Act of 1882." In affirming the Circuit Court of Appeals the Supreme Court said (256 U.S. at 10, 41 S.Ct. at 419, 65 L.Ed. 801): "The proposition has a relevant and conclusive application when a judgment of a former action is pleaded but limited application when urged in the same suit, it expresses a practice only and useful as such, but not a limitation of power." It is quite true that if Chase had obtained a decree in his favor at the first trial and this decree had been affirmed on appeal, such decree in any sub-

sequent litigation between the same parties would, on familiar principles of res judicata, have been conclusive on Chase's right to the allotment, despite the fact that the United States had a good legal defense which it neglected to set up. But that was not what happened.

Cases like Rhodes v. Commissioner, 4 Cir., 111 F.2d 53, and Commissioner v. Richter, 3 Cir., 114 F.2d 452, certiorari granted, November 18, 1940, 61 S.Ct. 172, 85 L.Ed. —, cited by the taxpayer, are clearly distinguishable. They rest on the proposition that an appellate court must not reverse a judgment or decree below upon a ground not presented to the lower court or considered by it. Whether or not this proposition is universally true (cf. Helvering v. Hormel, 8 Cir., 111 F.2d 1, certiorari granted, October 14, 1940, 61 S.Ct. 35, 85 L.Ed. —), it has no application here, for in the cases at bar the contention that appellees were taxable under Section 213 was presented to the court below, and that court, in rendering the judgments now appealed from, erroneously declined, as we think, to consider such contention on its merits.

■ But the outcome would be the same, even if our mandate on previous appeal may be interpreted as a direction to the District Court to give judgments for the taxpayers provided they establish the facts alleged in their declarations. Such an interpretation would be based on the argument that in holding that the demurrers to the declarations should not have been sustained, we necessarily decided (whether we realized it or not) that the declarations stated good causes of action notwithstanding anything in Section 219, Section 213, or any other section of the Revenue Act. All this comes to is that our previous decision established as the law of the case that Section 213 does not defeat the claims for refund. But the Circuit Court of Appeals on second appeal certainly would not follow its earlier law of the case when there has intervened between the two appeals a controlling opinion of the Supreme Court. Luminous Unit Co. v. Freeman-Sweet Co., 7 Cir., 3 F.2d 577, 580; Maryland Casualty Co. v. City of South Norfolk, 4 Cir., 54 F.2d 1032, 1039.

It seems that we must deal with Section 213, much as we would like to avoid it until the Supreme Court has had occasion in other cases to elaborate the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788. When the income of

a trust is not taxable to the grantor under the specific provisions of Section 219 (Sections 166 and 167 of the present act, 26 U.S.C.A. Int.Rev.Code §§ 166, 167), it must be recognized that there is a considerable margin of uncertainty as to how far the income is taxable to the grantor under the blanket provisions of Section 213 (Section 22(a) of the present act, 26 U.S.C.A. Int. Rev. Code, § 22(a)). This uncertainty can be narrowed only by subsequent decisions of the Supreme Court.

The terms of the trust instrument in the Clifford case differ widely in detail from those of the instruments now before us. The Higgins trusts are not short-term trusts, which was an important feature of the Clifford case. But Mr. Justice Douglas pointed out in that case that "no one fact is normally decisive." [309 U.S. 331, 60 S.Ct. 557, 84 L.Ed. 788.] The basic inquiry, as he states it, is whether the benefits directly or indirectly retained by the grantor blend so imperceptibly with the normal concepts of full ownership, that the grantor after the trust has been established may still be treated as the owner of the corpus. "Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue." 309 U.S. at page 334, 60 S.Ct. at page 556, 84 L.Ed. 788.

Examining a typical trust set up by Mrs. Higgins, what is the extent of her dominion over the corpus? She is the dominant trustee under Article Sixth. She has broad powers of management, of investment and reinvestment, of sale of any of the trust property, either at public or private sale, without the necessity of a court decree. She is liable only for such losses in the trust property as happen through her own "wilful default."

This alone is not enough. There is no statutory warrant for treating the income of a trust as that of the grantor "merely because he has made himself trustee with broad power in that capacity to manage the trust estate." Commissioner v. Branch, 114 F.2d 985, 987, decided by this court October 23, 1940. But on the other hand, taxation of the income to the grantor is not excluded by the mere fact that the grantor holds legal title to the corpus as trustee. His powers as trustee, in conjunction with other provisions of the trust instrument, may give him a dominion over the corpus substantially equivalent to "full ownership." Helvering v. Clifford makes this clear.

In addition to her powers of management as trustee, Mrs. Higgins is applying the income to pay premiums on a policy of insurance on the life of her husband. The proceeds of this policy, and all other accumulations of trust property, under Article Fourth, upon the expiration of three years after the death of her husband, will be paid to Mrs. Higgins, if living, otherwise as she shall appoint by will to members of her family. Under paragraph (b) of Article Fourth she need not even wait these three years; she may at once pay any or all of the principal or income to herself, if she as trustee thinks that this will most promote her "best interests and welfare."

Furthermore, even before the policy matures by the death of Mr. Higgins, Mrs. Higgins has a practical power over the disposition of the corpus. Under Article Second she may at any time as trustee demand the cash surrender value of the policy. Under Article Third, if she as trustee should deem it advisable for her own "comfort, maintenance, support, advancement, education or welfare," she is empowered to pay over to herself individually the whole or any part of the corpus. Granting that these are fiduciary powers, so were the powers of control over investment which the court regarded as significant in the Clifford case. With such a vague criterion of judgment prescribed in the trust instrument, it is highly improbable that anyone could successfully invoke the power of a court of equity to upset a decision by Mrs. Higgins as trustee to terminate the trust by assignment of the trust property to herself individually. It is equally improbable that anyone of the "intimate family group" would ever attempt to do so. In the Clifford case the court said (309 U.S. at page 335, 60 S.Ct. at page 557, 84 L.Ed. 788) that the grantor "has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact." This quotation seems applicable to the cases at bar. If the emphasis is on economic realities, the reasons for taxing the income to the grantors in the present cases are at least as strong as in the Clifford case.

A point of procedure remains. At several places in its opinion, the Supreme Court in the Clifford case seems to regard the basic issue whether the grantor remains in substance the owner of the corpus as a question of fact, calling for appropriate findings by the trier of fact. Since the issue may depend not only upon an analysis of the terms of the trust but also upon "all the circumstances attendant on its creation and operation" (309 U.S. at 335, 60 S. Ct. at 556, 84 L.Ed. 788), there may be cases where questions strictly of fact are presented. However, in the Clifford case, the considerations mentioned by the court as supporting the conclusion that the grantor remained in substance the owner of the corpus, were all derived from the terms of the trust instrument.

In the present cases the District Court has made no finding either way on the issue whether the grantors remained owners of the corpus of the respective estates, because the court did not think that Section 213 could be considered. But on the record before us, it would not be appropriate to remand the cases for further findings of fact. The underlying facts have been stipulated, and there seems to be nothing outside the terms of the trust instruments bearing on the "basic issue." The District Court is in no better position than we are to draw the ultimate conclusion. An examination of the trust instruments, in the light of the Clifford case and its rationale, leads us to the conclusion that as a matter of law the income of the trusts is taxable to the respective grantors. The taxpayers are not entitled to the claimed refunds.

The judgments of the District Court are reversed and the cases remanded to that court with directions to enter judgment in each case for the defendant.