Kenneth L. GASTON, Plaintiff,

v.

Thomas A. COUGHLIN, III, Commissioner, Department of Correctional Services; William Costello, Deputy Superintendent of Security Services, Eastern Correctional Facility; Silas Countryman, Sergeant; John B. Calhoun, Correction Officer; Jeffrey A. Marcus, Correction Officer; Sherman Richards, Correction Counselor; Robert Hoke, Superintendent, Eastern Correctional Facility; and Robert J. Fleming, Deputy Superintendent for Programs, Eastern Correctional Facility, Defendants.

No. 90–CV–820(LEK/RWS).

United States District Court,
N.D. New York.

Feb. 22, 2000.

Kenneth L. Gaston, Collins, NY, pro se.

Office of Salvatore J. Piemonte, Syracuse, Salvatore J. Piemonte., Esq., Standby Attorney for Plaintiff.

Eliot L. Spitzer, Attorney General of State of New York, Jeffrey P. Mans, Assistant Attorney General, Litigation Bureau, Albany, NY, for Defendants.

### MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is Defendants' motion for reconsideration of the Court's 3 November 1999 verdict, judgment and order finding that Defendants Calhoun and Marcus had violated Plaintiff Gaston's Constitutional rights, rendering those Defendants liable to Plaintiff pursuant to 42 U.S.C. § 1983, and awarding to Plaintiff damages of $4221.40, plus prejudgment interest, post-judgment interest, and equitable relief. *See Gaston v. Coughlin*, 81 F.Supp.2d 381, 392–93 (N.D.N.Y. 1999) (Kahn, J.). Defendants argue that the Court should not have calculated Plaintiff's lost wages on the basis of a seven-day work week, and that the award of damages should be reduced accordingly.

## I. *Standard of Review for Motions for Reconsideration*

 Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g), unless otherwise governed by Fed.R.Civ.P. 60. The "clearly erroneous" standard of review applies to motions for reconsideration. The moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (Calabresi, J.). Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C–TC 9th Ave. Partnership*, 182 B.R. 1, 3 (N.D.N.Y.1995) (McAvoy, C.J.).

In the present case, Defendants do not contend that the first ground, an intervening change in controlling law, applies. Nor are Defendants contending that the second ground, the availability of new evidence not previously available, applies. It appears that Defendants are instead arguing on the basis of the third ground, that their motion for reconsideration should be granted in order to correct a clear error of law or prevent a manifest injustice.

 This is a demanding standard. It is not enough ... that [the moving party] could now make a more persuasive argument .... "[M]ere doubt on our part is not enough to open [up] the point for full reconsideration." The law of the case will be disregarded only when the court has "a clear conviction of error" with respect to a point of law on which its previous decision was predicated.

*Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981) (Friendly, J.) (citations omitted) (quoting *White v. Higgins*, 116 F.2d 312, 317 (1st Cir.1940), and *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964) (Friendly, J.)). A simple difference of opinion, no matter how deep it runs, will not warrant reconsideration. "[A]ny litigant considering bringing a motion for reconsideration must evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *In re C–TC 9th Ave. Partnership*, 182 B.R. at 3.

## II. *Discussion*

 The Court calculated Plaintiff's award of damages for lost wages as follows:

> *Lost wages:* The Plaintiff was restricted from work from 2 March to at least 30 March 1988, when a transfer request was made by a Counselor for the Plaintiff. Thus, for at least 28 days, Plaintiff lost $1.55 per day. That amounts to $43.40.
>
> Since approximately 30 March 1988, Plaintiff has worked at 5–day per week jobs, which pay $1.45 per day. He has thus lost $1.55 per day on the weekends, and $0.10 per day during the week, or $3.60 per week. From 30 March 1988 to 3 November 1999 is 605 weeks; that number of weeks times $3.60 is $2178.00.
>
> Accordingly, Plaintiff's total lost wages are: $2221.40.

81 F.Supp.2d at 392 (citations omitted).

Defendants argue that the Court should not have included in these calculations the $1.55 per week in wages for a seventh day of work. Their rationale is that, as discussed in some detail in the Court's 3 November 1999 decision, New York State law prohibits inmates from working more than six days a week.[1] Defendants main-

---

1. Employment of inmates in State correctional facilities is "not to exceed eight hours of each day other than Sundays and public holidays" unless an inmate *volunteers* to work on a Sunday or a public holiday in "specialized areas" of the facility, in which case the in-

tain, therefore, that Plaintiff is entitled to recover wages for only the lawful six days of work per week. (*See* Jeffrey P. Mans Affirmation ("Mans Aff'n") at ¶¶ 3–5, attached to Defs.' Notice Mot. (Doc. 141, 17 Nov. 1999); Mem. Law in Supp. Defs.' Mot for Recons. ("Defs.' Recons. Mem.") at 1–2 (Doc. 142, 17 Nov. 1999).) Defendants conclude that the award should accordingly be reduced by $1.55 for each of the 605 weeks from 30 March 1988, when authorities at Eastern Correctional Facility requested Plaintiff's transfer, to 3 November 1999, when the Court handed down its trial decision. (*See* Mans Aff'n at ¶ 5; Defs.' Recons. Mem. at 2.) 605 times $1.55 equals $937.75; reducing the Court's $2,221.40 award for lost wages by that amount would result in a total award for lost wages of $1283.65.

This Court did not predicate its calculation of lost wages on the legality of a seven-day work week for state prison inmates. The award was to compensate Plaintiff for actual lost wages based on the actual inmate-employment practices of New York State. In its 3 November 1999 decision this Court noted the ample, uncontroverted evidence that inmate employment at Eastern Correctional Facility was in many instances in contravention of the State's legal limits on hours per day and days per week worked. Kitchen workers such as Plaintiff were notably subject to *de facto* requirements that they work in excess of the statutory limits; Plaintiff asserted to prison authorities "that the mess hall schedule was not in compliance with Section 171 because that schedule did not limit inmates to eight hours' work per day and give them a day off each week, but instead required them to work twelve to sixteen hours a day, seven days a week." 81 F.Supp.2d at 384.

The Court might be more inclined to see merit in Defendants' attempt to reduce the damage award by invoking Section 171 if,

following Plaintiff's presentation of the issue to prison authorities, the State had shown some effort to bring its practices into compliance with the law by reducing inmates' daily hours worked or limiting their work week to six days. Instead, uncontroverted evidence and testimony by Plaintiff indicate that the State proceeded to take measures to evade the law.

On 24 February 1988 Plaintiff asked Mr Xavier Jackson, president of the Inmate Liaison Committee ("I.L.C."), to raise the issue of Correction Law § 171(1) with the facility superintendent and the I.L.C. executive committee at the I.L.C.'s next executive meeting. (*See* Trial Tr. at 16 ll.–2 to 24 (Doc. 138, 4 Nov. 1998).) On or about 26 or 27 February 1988, Plaintiff himself met with Defendant Robert J. Fleming, Deputy Superintendent for Programs at the prison, with another inmate, and with two Correction Officers. He raised the issue of the facility's apparent non-compliance with Section 171. Defendant Fleming said that he would have to look into the matter further. (*See* Trial Tr. at 20 ll.–5 to 18; *see also* Pl.'s Third Am. Compl. at 4 (Doc. 49, 11 May 1992).) Then, the agenda for the 2 March 1988 I.L.C. meeting (dated 26 February 1988), in accordance with Plaintiff's request to Mr Jackson, included an inquiry about the facility's failure to comply with the requirements of Section 171 with respect to inmates working in the mess hall. The agenda, which is signed by Defendant Robert Hoke, Facility Superintendent, bears the answer, "Law will be reviewed for application to our facility; take appropriate measures." (Brief in Supp. Mot. Summ. J. Ex. D at ¶ 7 (Doc. 80, 14 July 1993).)

The result of these inquiries and meetings is evident in a memorandum from Mr George J. Nedy, Eastern Correctional Facility's I.P.P.C. (apparently, the "Inmate Program Placement Coördinator" [2]), dated

---

mate "so employed shall be allowed an alternative free day within the normal work

week." N.Y. Correct. Law § 171(1) (McKinney 1999–2000).

2. *See Santiago v. Miles,* 774 F.Supp. 775, 782

Thursday, 10 March 1988—eight days after the 2 March I.L.C. meeting, eight days after Defendant Calhoun submitted a memorandum that apparently was intended to show Plaintiff planning to engage in work-related misconduct, and eight days after facility authorities informed Plaintiff that he would no longer be permitted to work in the mess hall. (*See* Trial Tr. at 25 ll.-5 to 24; Pl.'s Trial Ex. 6.) Mr Nedy's memorandum reads,

> [T]here should [henceforth] be a written record of consent from every inmate whose present assignment requires him to work 7 days a week.
>
> To achieve this, please identify ... inmates who have a 7 days a week assignment and have each one of them complete and sign the attached form.

(Pl.'s Trial Ex. 5.) [3] In other words, facility authorities had determined that they would not comply with the law. Instead, they would obtain the consent of the affected inmates to continue operating in contravention of the law.

Plaintiff correctly observes that no evidence before the Court suggests in any way that this policy has changed since March 1988. (Affirmation at ¶ 3 (Doc. 146, 17 Dec. 1999).) This Court does not here endorse the legitimacy of the Department of Correctional Service's policy of evading the work limits established in Section 171, nor does it concede that the consent thus obtained from inmate employees may be presumed to be uncoerced. Nonetheless, insofar as from March 1988 to November 1999 the policy of noncompliance with Section 171 represented the actual practice at Eastern Correctional Facility of the Department of Correctional Service's employment of inmates—at least in the mess hall jobs such as Plaintiff held prior to the events underlying this action—the Court cannot agree that it is a manifest injustice

or clearly contrary to law to include in damages awarded to Plaintiff, wages lost that he would have earned on a seventh day of work per week but for Defendants' violation of his rights. Indeed, it *would* be a manifest injustice to hold Plaintiff, in the manner requested by Defendants, to a provision of the law that the Department of Correctional Services has seen fit to disregard, routinely, at its convenience. Accordingly, the Court must DENY Defendants' motion for reconsideration and for reduction of the Court's award to Plaintiff for lost wages.

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' motion for reconsideration is **DENIED**; and

IT IS FURTHER ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

---

(W.D.N.Y.1991).

3. The memorandum was addressed to "Payroll Supervisor—Payroll # ," and copied to Defendants Hoke, Fleming, and William Costello (Deputy Superintendent for Security Services), to Herbert McLaughlin (first Deputy Superintendent), Joseph Ronsini (Deputy Superintendent for Program Services), and the I.L.C.