## DEERE et al. v. STATE OF NEW YORK et al.

District Court, N. D. New York. October 10, 1927.

**1. Courts ⬤⟿322(1)—Diversity of citizenship, to give jurisdiction to federal court, must appear from face of complaint.**

To give a federal court jurisdiction on the ground of diversity of citizenship, it must appear from the complaint that plaintiff and defendants are citizens of different states.

**2. Indians ⬤⟿31—Indian, becoming United States citizen, is citizen of state of his residence.**

An Indian, becoming a citizen of United States and residing in a state, is a citizen of that state.

**3. Indians ⬤⟿27(1)—Indian may sue in federal court (8 USCA § 3).**

Since Act June 2, 1924 (8 USCA § 3) making all native Indians citizens, an Indian may maintain suit in a federal court.

**4. Courts ⬤⟿259—Federal court must determine its own jurisdiction, regardless of state statutes or decisions.**

It is the duty of a federal court to determine its own jurisdiction, regardless of state statutes or decisions.

**5. Courts ⬤⟿299(3)—Complaint in ejectment held not to state cause of action arising under federal Constitution or laws.**

A complaint in ejectment does not state a cause of action within the jurisdiction of a federal court, as arising under the Constitution or laws of the United States, because of an allegation that the conveyance under which defendants claim is invalid, because made in violation of such Constitution and statutes, which allegation was unnecessary to statement of the cause of action.

At Law. Action by James Deere, as a member of the St. Regis Tribe of Indians, on behalf of himself and all other members of said Tribe, against the State of New York, the St. Lawrence River Power Company, and others. On motion to dismiss complaint. Granted.

Wise, Whitney & Parker, of New York City, and Edward A. Everett, of Potsdam, N. Y. (Henry A. Wise, Jennings C. Wise, and Carl E. Whitney, all of New York City, of counsel), for plaintiff.

L. P. & H. C. Hale, of Canton, N. Y. (Charles E. Hughes, of New York City, and Ledyard P. Hale, of Canton, N. Y., of counsel), for defendants.

Albert Ottinger, Atty. Gen., and Henry S. Manley, Dep. Atty. Gen., for State of New York.

COOPER, District Judge. This is an action in ejectment. The defendants move to dismiss the complaint on these grounds:

(1) That the federal court has no jurisdiction, because there is no diversity of citizenship.

(2) That the plaintiff has no legal capacity to sue.

(3) That the federal court has no jurisdiction, because the complaint states no cause of action arising under the Constitution, laws, or treaties of the United States.

(4) That the court has no jurisdiction of the subject of the action.

(5) That the complaint does not state facts sufficient to constitute a cause of action.

The complaint alleges that the plaintiff is a member of the St. Regis Tribe of Indians, and brings this suit on behalf of himself and all other Indians of that tribe; that the St. Regis Tribe of Indians is a branch of the Mohawk Nation, one of the Six Nations of the Iroquois Confederacy; that the lands from which the plaintiff seeks to eject the defendants are a part of the lands reserved to the Six Nations of the Iroquois Confederacy, under treaty between the United States and the Six Nations, made on October 22, 1784 (7 Stat. 15), and were more specifically reserved in the treaty between the Seven Nations of Canada, the United States of America, and the state of New York, made May 31, 1796 (7 Stat. 55); that in the last-mentioned treaty lands in St. Lawrence and Franklin counties, in the state of New York, were reserved for the use of the St. Regis Indians, and included in such lands was a certain tract, one mile square, situated on both sides of the Grass river, adjoining a mill built by the Indians on the Grass river, and extending substantially from the said mill to the confluence of the Grass and St. Lawrence rivers. The lands involved in this action are a part of the said one mile square.

The complaint also alleges that the said one mile square, as well as the other land reserved for the said St. Regis Tribe of Indians, were reserved to and occupied by them in their tribal capacity and that the said lands, excepting the one mile square, are still occupied by the said St. Regis Tribe of Indians in their tribal capacity, but that the defendants are in possession of part of the one mile square involved in this action, and withhold possession from said tribe; that said possession is unlawful; that the said tribe is lawfully entitled to the possession thereof, and possession is demanded, together with damages for detention of such lands.

The complaint further alleges, in paragraphs 13 to 16, inclusive, that on March 16, 1824, an alleged treaty was made by cer-

tain Indians, purporting to represent said tribe, and the state of New York, by which the interest of the' Indians in said one mile square was conveyed and relinquished to the state of New York, and subsequently by the state granted by letters patent to the predecessors of the defendants, and that defendants hold thereunder; that such treaty was in violation of the Constitution and laws of the United States, and was and is void and of no effect; that the Indians purporting to represent the tribe were not authorized to do so.

On the ground that there is no diversity of citizenship, the decision must be with the defendants. The complaint alleges ,that the plaintiff resides in the 'Northern district of New York, and it does not appear but that all the defendants also reside in the state of New York and Northern district of New York. Indeed, there is a specific allegation that all the corporate defendants are incorporated under the laws of the state of New York, including a municipal corporation, which is a subdivision of the county of St. Lawrence, of the state of New York, and that all the defendants can be found within the state.

[1] Clearly there is no diversity of citizenship. In order to make such diversity, it must appear from the face of the complaint that plaintiff and defendants are citizens of different states, or, in other words, it must appear that the plaintiff is a citizen and resident of a state other than New York, where defendants reside. Brown v. Keene, 8 Pet. 112, 8 L. Ed. 885; Gassies v. Ballon, 6 Pet. 761, 8 L. Ed. 573; Williamson v. Osenton, 232 U. S. 619, 34 S. Ct. 442, 58 L. Ed. 758.

In Hepburn v. Ellzey, 2 Cranch, 445, 2 L. Ed. 332, the Supreme Court, in an opinion by Chief Justice Marshall, held that a citizen of the District of Columbia could not maintain a suit in the federal court of Virginia against a citizen of Virginia upon the ground of diversity of citizenship since a citizen of the District of Columbia was not a citizen of any state. See, also, Stein v. Fleischmann (D. C.) 237 F. 679.

[2] An Indian, becoming a citizen of the United States and residing in a state, is held to be a citizen of that state. Boyd v. Nebraska, 143 U. S. 135–162, 12 S. Ct. 375, 36 L. Ed. 103. Matter of Heff, 197 U. S. 448, 25 S. Ct. 506, 49 L. Ed. 848. The latter case was overruled by U. S. v. Nice, 241 U. S. 591, 36 S. Ct. 696, 60 L. Ed. 1192, but on another point.

Plaintiff does not urge diversity of citizenship as the basis of jurisdiction, however,

and the lack thereof does not defeat the plaintiff, if his complaint presents a question arising under the Constitution, laws, or treaties of the United States, and if the plaintiff has legal capacity to sue.

Coming next to the plaintiff's legal capacity to sue, it appears that the earlier decisions in the state of New York held that the Indians did have such legal capacity. See Strong v. Waterman, 11 Paige (N. Y.) 607–612. The court said:

"Indians cannot therefore institute a suit in the name of the tribe; but they must sue in the same manner as other citizens would be required or authorized to sue, for the protection of similar rights. And as individuals composing the Seneca Nation of Indians, and residing on and entitled to their several reservations, are too numerous to join in this suit by name, the bill is properly filed by these complainants in behalf of themselves and the residue of the nation residing upon their reservations. * * * The parties are therefore properly before the court, and the complainants are entitled to retain this preliminary injunction."

In that case the suit was in equity to prevent trespass, and not an action in ejectment. The later decisions of the state courts, however, are to the contrary.

In Johnson v. Long Island Railroad Company, 162 N. Y. 462, 56 N. E. 992, which was an action in ejectment, it was held in substance that neither the tribe nor an individual member thereof could appear in court in their or his own right, but possessed only such rights to appear and litigate in the courts of justice as are conferred on them by statute; and in the case of the Onondaga Nation v. Thacher, 169 N. Y. 584, 62 N. E. 1098; which was not an action in ejectment, the Court of Appeals affirmed the judgment . of the lower courts "upon the ground that neither the Onondaga Nation, nor the individual Indians named as plaintiffs, had legal capacity to bring and maintain the action."

In the federal courts there are cases holding inferentially that an Indian living in the tribal relation, and not a citizen of the United States, cannot maintain an action in the federal courts.

In Felix v. Patrick, 145 U. S. 317–332, 12 S. Ct. 862, 867 (36 L. Ed. 719), which was not an action in ejectment, it was said upon the question of the laches of the Indian plaintiff:

"It is scarcely necessary to say in this connection that, while until this time they were not citizens of the United States," and

unable to sue "as such in the federal courts, the courts of Nebraska were open to them, as they are to all persons irrespective of race or color."

But it is to be observed that in that case the plaintiff was a citizen of the United States, and the question whether or not a noncitizen Indian could maintain an action in federal court was not before the court for decision.

There are also cases in which actions have been brought and maintained in the federal court by Indians, who in some cases were and in some cases were not citizens of the United States, although the question of citizenship was not passed on, and usually not referred to, by the court. Such are the cases of Lone Wolf v. Hitchcock, 187 U. S. 553, 23 S. Ct. 216, 47 L. Ed. 299; Gritts v. Fisher, 224 U. S. 640, 32 S. Ct. 580, 56 L. Ed. 928; Sizemore v. Brady, 235 U. S. 441, 35 S. Ct. 135, 59 L. Ed. 308; Chase v. U. S., 256 U. S. 1, 41 S. Ct. 417, 65 L. Ed. 801; Taylor v. Anderson, 234 U. S. 74, 34 S. Ct. 724, 58 L. Ed. 1218—none of which was an ejectment action, except Taylor v. Anderson.

Kansas Indians, 72 U. S. (5 Wall.) 737, 18 L. Ed. 667, has no application here, as that case originated in the Kansas state courts, and never was in the federal District Court.

[3] But since the enactment of the Act of June 2, 1924 (8 USCA § 3), making citizens of all Indians, there would seem to be little doubt that an Indian citizen may maintain an action in the federal courts. Such is the necessary inference from the above quotation in Felix v. Patrick, supra. Such is a reasonable inference from the other cases cited.

In the case of Lane v. Pueblo of Santa Rosa, 249 U. S. 110, 39 S. Ct. 185, 63 L. Ed. 504, the question was raised as to legal capacity of the Indian town of the Pueblo of Santa Rosa to sue. The court held that the town was by statute a body corporate, with power to sue. The suit was in equity and related to tribal lands. The court, in respect to the contention that the Indians were wards of the government, that the disposal of their lands was not within their own control, and that therefore they could not sue, said:

"Besides, the Indians are not here seeking to establish any power or capacity in themselves to dispose of the lands, but only to prevent a threatened disposal by administrative officers in disregard of their full ownership. Of their capacity to maintain such a suit we entertain no doubt. The existing wardship is not an obstacle, as shown by re-peated decisions of this court, of which Lone Wolf v. Hitchcock, 187 U. S. 553 [23 S. Ct. 216, 47 L. Ed. 299], is an illustration."

It is true that in Johnson v. Long Island Railroad, supra, the opinion says that the Indian plaintiff was a citizen of the United States and yet he was not permitted to sue in the state courts. Whether he had been made a citizen by act of Congress, which had exclusive right to confer such citizenship, or the statement in the opinion was a mere inadvertence, does not appear. This case is not binding on the federal court; the decision not construing a statute of the state of New York involved here, and this not being an action in which the federal jurisdiction depends upon diversity of citizenship. If the Indian was a citizen, and was denied the equal rights of other citizens to sue in the state courts, it would seem that there may have been conflict with the Fourteenth Amendment of the United States Constitution, which was then in force, but doubtless the real ground of the decision was that the complaint stated no cause of action. The court said:

"It is conceded by the complaint in this action 'that the tribe have no legal capacity to sue therefor, and have no corporate name by which they can institute such a suit.' * * * It follows, logically, that no one member of the tribe could sue for the benefit of all, as the cause of action does not exist."

If the defendant's contention that the plaintiff has no legal capacity to sue is limited to capacity to sue in ejectment actions as to tribal lands, it may be said that, while the courts of New York have upheld that doctrine, no federal court cases in ejectment so holding have been brought to the attention of or been found by the court. It would seem, moreover, that such limited incapacity to sue goes rather to the jurisdiction of the court over the subject-matter of the action, which question is referred to later herein.

The contention that this court has no jurisdiction, because complaint states no cause of action arising under the Constitution, laws, or treaties of the United States, presents more difficulty. There would seem to be little doubt that the question of whether or not the St. Regis Indians could, without the consent of the United States, and without compliance with their laws, convey the lands in question by treaty with the state of New York, as alleged, presents a federal question; for the decision of such question depends upon the construction and application of the Constitution and laws of the United States regulating trade with the Indians,

especially the act of 1802 (2 Stat. 139), and particularly section 12 thereof, which was the federal law in force at the time of the alleged treaty between the state of New York and the St. Regis Indians in 1824.

This seems clear from the well-considered case of Seneca Indians v. Christie, 126 N. Y. 122, 27 N. E. 275. In this case the Seneca Nation of Indians brought action in ejectment in the state courts, pursuant to an enabling statute of the state of New York, to recover 100 acres of land in the county of Erie. The Seneca Nation held title or right of occupancy by virtue of like treaties between the United States and the Indians. The New York Court of Appeals held that alienation of the lands in question by the Indians was in accordance with the provisions of section 12 of the same act of 1802. The court said:

"Upon full consideration we are of opinion that the grant" made by the Seneca Nation to the predecessors of the defendant, "of August 21, 1826, was a valid transaction and was not in contravention of the provisions of the federal Constitution or of the Indian Intercourse Act of 1802, and vested in the purchasers a good title in fee simple absolute to the lands granted, free from any claim of the Seneca Nation."

The only other questions discussed by the court bore upon the merits of the case and were:

(1) Whether the federal government subsequently ratified the purchase by the defendant's predecessors, by accepting the purchase money of the lands, acting as custodian thereof, and paying income therefrom to the Indians. This is, of course, a federal question.

(2) Whether the plaintiff, Seneca Nation, was barred by the limitation of time provided in the enabling act of the state of New York authorizing the action. No such question can arise in the instant case, as plaintiff is not suing under any enabling act.

The defendants cite various cases holding that, where the source of title is the federal government, that fact alone does not raise a federal question. Such cases have little application here. The source of title here is not letters patent or other form of grant by the federal government. Here the Indians claim immemorial rights, arising prior to white occupation, and recognized and protected by treaties between Great Britain and the United States and between the United States and the Indians. By the treaty of 1784 between the United States and the Six Nations of Indians, and the treaty of 1796

between the United States, the state of New York and the Seven Nations of Canada, the right of occupation of the lands in question by the St. Regis Indians, was not granted, but recognized and confirmed.

But, even if the United States were considered the source of such title or rights as the Indians had to the land in question, it is not claimed that such fact raises the federal question here, but the claim is that the federal question arises from the allegation that the acquisition by the state of New York from the St. Regis Indians of the right of occupancy of lands in suit by the treaty of 1824 between the state and the St. Regis Tribe was in violation of the provisions of the Constitution and laws of the United States, particularly the Indian Intercourse Act of 1802, upon the construction and application of which the case of Seneca Nation of Indians v. Christie, supra, was decided and this case undoubtedly must be decided. That is a federal question.

[4] It matters not that the courts of the state of New York are competent to pass upon such a question subject to review by the United States Supreme Court. It is the duty of the federal court to take jurisdiction where such jurisdiction exists. Kline v. Burke Construction Company, 260 U. S. 226, 234, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077; Farrell v. Stoddard (D. C.) 1 F.(2d) 802–805; Id. (D. C.) 2 F.(2d) 62.

Though the state courts would be competent to pass on the federal question involved here, as they were in Seneca Nation v. Christie, 126 N. Y. 122, 27 N. E. 275, it is clear that the state courts will not take jurisdiction in the absence of an enabling act, unless they find the incapacity to sue to have been eliminated by the act of 1924 conferring citizenship on the Indians, which is uncertain. Johnson v. Long Island Railroad Company, 162 N. Y. 462, 56 N. E. 992, supra.

[5] Though it seems reasonably clear that a federal question is involved here, yet, since this is an action in ejectment, and the bare statement of the necessary facts of an ejectment action would not disclose the federal question, it has been held upon highest authority that the complaint does not state a federal question, and that the federal court has no jurisdiction. This authority is Taylor v. Anderson, 234 U. S. 74, 34 S. Ct. 724, 58 L. Ed. 1218, supra. That was an action in ejectment brought by an Indian plaintiff, and the complaint there, like the complaint in suit, set up that defendants claimed right of possession under a certain deed, which deed was alleged to be void under fed-

eral laws restricting the alienation of lands allotted to the Choctaw and Chickasaw Indians, and therefore raised a federal question. The Supreme Court said:

"It is now contended that these allegations showed that the case was one arising under the laws of the United States, namely, the acts restricting the alienation of Choctaw and Chickasaw allotments, and therefore brought it within the circuit court's jurisdiction. But the contention overlooks repeated decisions of this court, by which it has become firmly settled that whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute (now No. 24, Judicial Code), must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 460, 464 [14 S. Ct. 654, 38 L. Ed. 511]; Third Street Railway Company v. Lewis, 173 U. S. 457, 460 [19 S. Ct. 451, 43 L. Ed. 766]; Florida Central Railroad Company v. Bell, 176 U. S. 321, 329 [20 S. Ct. 399, 44 L. Ed. 486]; Boston, etc., Mining Company v. Montana Ore Company [188 U. S. 632, 23 S. Ct. 434, 47 L. Ed. 626], supra; Joy v. St. Louis [201 U. S. 332, 26 S. Ct. 478, 50 L. Ed. 776], supra; Devine v. Los Angeles, 202 U. S. 313, 333 [26 S. Ct. 652, 50 L. Ed. 1046]; Louisville & Nashville Railroad Company v. Mottley, 211 U. S. 149 [29 S. Ct. 42, 53 L. Ed. 126]; Shulthis v. McDougal, 225 U. S. 561, 569 [32 S. Ct. 704, 56 L. Ed. 1205]; Denver v. New York Trust Company, 229 U. S. 123, 133–135 [33 S. Ct. 657, 57 L. Ed. 1101]. Tested by this standard, as it must be, the case disclosed by the petition was not one arising under a law of the United States."

There seems to be no way to distinguish the case at bar from Taylor v. Anderson. In the latter case the lands were allotted lands, and here they are alleged to be tribal lands; but that is immaterial, as the federal question is the same, viz. alienation of Indian lands in violation of federal law, and in each case is shown by allegations set up as part of the complaint.

The form of a complaint in ejectment is not provided by the laws of the state of New York, and may have been provided by the laws of Oklahoma, in which state the Taylor v. Anderson Case arose. But that also is immaterial, as a cause of action in ejectment may be adequately stated in New York by alleging the existence and nature of plaintiff's title or right of possession, that defendant is in unlawful possession and holds plaintiff from lawful possession to plaintiff's damage in a sum named. No federal question is raised thereby. The doctrine stated in Taylor v. Anderson has been held many times by the United States Supreme Court in ejectment cases and various other kinds of cases, both at law and in equity, and is settled beyond question.

Because this court believes that the doctrine laid down in Taylor v. Anderson is applicable and controls the decision here, it must be held that the complaint states no federal question and the motion to dismiss must be granted.

It is not necessary to decide the fourth and fifth grounds of the motion to dismiss, although Taylor v. Anderson would seem to decide the question in defendant's favor, on both the fourth and fifth grounds. Perhaps it is better for plaintiff to have the question decided and reviewed upon the pleadings, rather than after a possibly lengthy and expensive trial.

An order may be entered in accordance herewith, dismissing the complaint, with leave to amend within 2^ days after service of order and notice of entry thereof.