**Hayes RICHARDSON, Plaintiff,**

v.

**Virla L. MALONE, et al., Defendants.**

**No. 90–C–346–C.**

United States District Court,
N.D. Oklahoma.

April 8, 1991.

---

**1464**

Charles R. Cox, Tulsa, Okl., for Hayes Richardson.

M. Allen Core, Tulsa, Okl., for Virla L. Malone, Leona Rose Malone and Michael Burris.

## ORDER

H. DALE COOK, Chief Judge.

The Court has for consideration the *Report and Recommendation* of the United States Magistrate Judge filed March 15, 1991 in which the Magistrate Judge recommended that Defendants' *Motion to Vacate Default Judgment* be granted due to the defect in service, and further that Defendants be given twenty (20) days in which to file their *Answer*.

No exceptions or objections have been filed and the time for filing such exceptions or objections has expired.

After careful consideration of the record and the issues, the Court has concluded that the *Report and Recommendation* of the United States Magistrate Judge should be and hereby is adopted and affirmed.

It is, therefore, Ordered that Defendants' *Motion to Vacate Default Judgment* is granted due to the defect in service, and further that Defendants are given twenty (20) days in which to file their *Answer*.

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

JEFFREY S. WOLFE, United States Magistrate Judge.

### FACTS AND POSTURE

Plaintiff, Hayes Richardson, filed a *Complaint* on April 20, 1990, in the District Court alleging that the Defendants, Virla L. Malone, Leona Rose Malone and Michael Burris (members of the Osage Indian Tribe), deceived him into loaning money to Virla Malone. With the money provided, Defendant Virla paid off one trailer house debt, bought another trailer house and purchased an automobile, each currently located in "Indian country."[1]

Plaintiff sought judgment and a constructive trust. The Court entered default judgment against Defendants on June 28, 1990, there being no *Answer* or other appearance. Subsequently, Defendants filed a *Motion to Set Aside Default Judgment* (docket # 6)[2] on July 9, 1990, alleging a defect in service of process because the summons did not accompany Plaintiff's *Complaint*. At the hearing on the motion to set aside the default judgment, Defendants also challenged the Court's jurisdiction. Pursuant to the following analysis, the United States Magistrate Judge finds that jurisdiction properly rests in this Court and recommends that the Defendants' *Motion to Set Aside Default Judgment* be granted.

Resolution of this matter is complicated by the fact that neither a tribal court nor a C.F.R. court exists. *See* 25 C.F.R. §§ 11.3–11.98 ME (1990) (permitting tribes to create criminal and civil courts having jurisdiction over actions involving Indians and arising in Indian country). If either a tribal court or a C.F.R. court existed, then such courts would have exclusive jurisdiction and Plaintiff would be required to exhaust those remedies before seeking relief in federal court. *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). The pleadings suggest that the Osage Indian Tribe is in the process of creating a C.F.R. court, but no such court exists today nor did it exist at the

1. Virla transferred title of one trailer house to Defendant Leona Rose.

2. "Docket numbers" refer to numerical designations assigned sequentially to each pleading, motion or order or other filing and are included for purposes of record keeping only. "Docket numbers" have no independent legal significance and are to be used in conjunction with the docket sheet prepared and maintained by the United States Court Clerk, Northern District of Oklahoma.

time of the transaction in question nor at the time this suit was filed. Therefore, if the Plaintiff is to have a forum in which to address the alleged grievances, the options are limited to either state or federal court. An analysis of state court jurisdiction in this matter is appropriate to support the finding that federal question jurisdiction properly rests before this Court.

*STATE COURT JURISDICTION*

■ From the inception of statehood to the present time, Oklahoma has not consistently asserted jurisdiction over controversies involving Indians and arising in Indian country. Long before Oklahoma became a State, the United States Supreme Court recognized the general principle that Indian territories were beyond the legislative and judicial jurisdiction of state governments. *Worcester v. Georgia,* 6 Pet. 515, 8 L.Ed. 483 (1832). That principle was reflected in the federal statute that granted statehood to Oklahoma. Act of Congress, June 16, 1906, 34 Stat. 267–78. Section 1 provided that:

> the inhabitants ... of the area of the United States now constituting the Territory of Oklahoma and the Indian Territory ... may adopt a constitution and become the State of Oklahoma ... Provided, that nothing in the said constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this Act had never been passed.

*Id.* The Oklahoma Constitution today still reflects compliance with Oklahoma's Enabling Act. Article I, Section 3 provides that:

> The people inhabiting the State do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public land shall have been extinguished by the United States, the same *shall be and remain subject to the jurisdiction, disposal and control of the United States.*

Okla.Const., Art. I, Sec. 3 (1981) (emphasis added). Congress provided an opportunity for States to assume civil and criminal jurisdiction over actions involving Indians and arising in Indian country. *See* 25 U.S.C. § 1324, 67 Stat. 588, 590 (1953) (commonly referred to as Pub.L. 280). Section 6 authorizes States, like Oklahoma, whose constitutions and statutes contain federally imposed jurisdictional restraints, to amend their laws to assume jurisdiction. As originally enacted, Pub.L. 280 did not require States to obtain the consent of affected Indian tribes before assuming jurisdiction over them. However, Title IV of the Civil Rights Act of 1968 amended Pub.L. 280 to require that all subsequent assertions of jurisdiction be preceded by tribal consent. Pub.L. 90–284, §§ 401, 402, 406, 82 Stat. 78–80, codified at 25 U.S.C. §§ 1321, 1322, 1326.

Assuming that the Osage Indian Tribe has *not* consented to state jurisdiction, for Oklahoma courts to have jurisdiction over actions involving Osage Indians or arising on Osage Indian lands, Oklahoma must have asserted jurisdiction prior to the 1968 amendments to Pub.L. 280. It has been written that "[p]erhaps in no other state has there been more confusion over who has jurisdiction in Indian Country than in the State of Oklahoma." K. Kickingbird, *Indian Jurisdiction* p. 63 (1983). Kickingbird's declaration is an understatement. Kickingbird additionally states that the same rules apply in Oklahoma as apply to the other states, i.e., "the federal government has primacy in Indian Affairs over the State. This means that unless the federal government has passed special legislation granting the state jurisdiction ..., only the federal government and the tribes have jurisdiction." *Id.* (footnote omitted). *A search through Oklahoma's statutes reveals no such assertion of jurisdiction by Oklahoma over the Osage Indian Tribe.*

Furthermore, a search of Oklahoma court decisions reveals no cases where a state court asserted jurisdiction over a dispute similar to the one now before the Court.

Of the few Oklahoma cases found dealing with state court jurisdiction over actions involving Indians, two require examination here. In *Ahboah v. Housing Authority of Kiowa Tribe*, 660 P.2d 625 (Okla. 1983), the Oklahoma Supreme Court held that *state district courts lacked jurisdiction* to entertain forcible entry and detainer actions where the subject property was located within Indian country. The court noted that:

> The touchstone for allocating authority among the various governments has been the concept of "Indian Country," a legal term delineating the territorial boundaries of federal, state and tribal jurisdiction. Historically, the conduct of Indians and interests in Indian property within Indian Country have been matters of federal and tribal concern. Outside Indian Country, state jurisdiction has obtained.

*Id.* at 627. Under this standard, the Oklahoma Supreme Court held Oklahoma district courts lack the jurisdiction to properly redress plaintiff's grievances because the action involves "conduct of Indians and interests in Indian property within Indian Country." While this case is not identical to the case at bar, it demonstrates the propensity of Oklahoma courts to reject jurisdiction. More to the point, in *Housing Authority of the Seminole Nation v. Harjo*, 790 P.2d 1098 (Okla.1990), the Oklahoma Supreme Court again held that state district courts lacked jurisdiction to entertain forcible entry and detainer actions where the *subject property was located within Indian country. Id.* at 1104. The court held that because the dispute involved property located in a "dependent Indian community," which was therefore part of Indian country as defined by 18 U.S.C. § 1151(b), the state district court was without jurisdiction to entertain the suit. The court noted that "[t]his case is not a matter properly litigable in the state courts of Oklahoma." *Id.*

Oklahoma has thus declined to assert jurisdiction over actions involving property located in Indian country. Therefore, if Plaintiff is to have a forum to entertain his grievances, it must be found in the federal courts; otherwise simple contracts between Indians and non-Indians would be greatly discouraged.[3]

## FEDERAL COURT JURISDICTION

It is well settled that a federal court is always obligated to inquire into its own jurisdiction. Plaintiff alleged both diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a) and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### A. Diversity of Citizenship

■ Plaintiff's federal court jurisdiction claim based on diversity of citizenship must be rejected for two reasons. First, Plaintiff assumes that because the Defendants are members of the Osage Indian Tribe, the Defendants are therefore foreign citizens. This clearly is not so. A Native American residing within the borders of a state is a citizen of that state (*Deere v. New York*, 22 F.2d 851 (D.C.N.Y.1927)), and thus is not a foreign citizen. *See generally Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831) (holding that Indian tribes are not foreign nations). Therefore, jurisdiction may not lie in federal court based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) where the Plaintiff is a non-Indian and the Defendant

---

**3.** As is alleged here, Native Americans could enter into contracts to purchase goods outside Indian Country, renege on payment, remove the property to Indian Country, claim immunity from state process and sit "unmolested" legally, inside the bounds of Indian Country. If such a zone of legal immunity were recognized non-Indians would soon be loathe to contract with Native Americans, fearing breach of contract and loss of purchased property upon its removal to Indian Country. More to the point, a ruling which declines federal jurisdiction effectively creates a jurisdictional vacuum where neither state nor federal courts will tread. Such a vacuum could well become a virtual "zone of piracy" where civil law does not exist. Such a result is clearly contrary to the fundamental principles which undergird this nation, and, as evinced by a long line of Congressional legislation.

is a Native American and where both Plaintiff and Defendant are otherwise citizens of the same state. Second, Congress amended 28 U.S.C. § 1332(a) on November 19, 1988, by enacting Pub.L. 100–702, 102 Stat. 4646, to provide district courts with original jurisdiction over civil actions between citizens from different states "where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs." Plaintiff only plead an amount in controversy exceeding $10,000, not the required $50,000.

*B. Federal Question*

■ As to federal question jurisdiction, resolution of the issue is a more complex undertaking. Title 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The dispute herein involves an alleged breach of contract. The fact that the Defendant is a Native American, in and of itself, does not vest this Court with jurisdiction because a Native American has no greater right, "than any other litigant," to utilize federal courts, merely because of his or her status as a Native American. *Martinez v. Southern Ute Tribe*, 273 F.2d 731, 734 (10th Cir.1960) (citing *Deere v. St. Lawrence River Power Co.*, 32 F.2d 550 (2d Cir.1929)).[4]

The operative fact in deciding the issue of federal jurisdiction is that the personal property subject of this action is physically located within "Indian country", i.e. beyond the reach of state law. The facts are straightforward. The property in which Plaintiff claims a security interest is physically located within Indian country. The state has declined to exercise jurisdiction and no Tribal or C.F.R. courts exist. The issue thus turns not on the status of Defendants as Native Americans, or on the fact that the property in which Plaintiff claims a security interest is held by a Native

American. Rather, the issue turns on the actual physical location of the property within Indian country, and the status of those lands as federal trust territories.

■ If the federal court is to exert jurisdiction, the only basis for assertion of federal jurisdiction, under these facts, is "federal question" jurisdiction. Title 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." For jurisdiction to stand, the Court must find that this civil action arises "under the Constitution, laws, or treaties of the United States." There must be a " 'substantial claim founded directly upon federal law' " in order for a federal court to have original jurisdiction under 28 U.S.C. § 1331. *Mescalero Apache Tribe v. Martinez*, 519 F.2d 479, 481 (10th Cir.1975) (quoting Mishkin, *The Federal "Question" in District Courts*, 53 Colum.L.Rev. 157, 165, 168 (1953)). The United States Supreme Court has held that the language "arising under" found in section 1331 may be met by "claims founded upon federal common law as well as those of a statutory origin." *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972).

The United States Magistrate Judge finds that the claim presently at bar, for recovery for breach of contract, under the unique circumstances presented, "arises under" federal common law. This result flows from analysis of the statutory scheme adopted by Congress in dealing with Indian lands. The analysis is as follows.

The Supreme Court has written that:

the inevitable incompleteness presented by all legislation means that interstitial federal law making is a basic responsibility of the federal courts. "At the very least, effective Constitutionalism requires recognition of power in the feder-

---

**4.** In *Martinez v. Southern Ute Tribe of Southern Ute Reservation*, 249 F.2d 915, 917 (10th Cir. 1957), the Court noted that "[i]n the absence of a federal statute [federal courts] do not have jurisdiction merely because an Indian who is a ward of the government is a party, *Deere v. St.*

*Lawrence River Power Co.*, 32 F.2d 550 (2d Cir. 1929) affirming *Deere v. State of New York*, 22 F.2d 851 (N.D.N.Y.1927), or because property or contracts of Indians are involved." (citing *Button v. Snyder*, 7 F.Supp. 597 (D.C.N.Y.1934)).

al courts to declare, as a matter of common law or 'judicial legislation,' rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress. In other words, it must mean recognition of federal judicial competence to declare the governing law in an area comprising issues substantially related to an established program of government operation."

*United States v. Little Lake Misere Land Co.,* 412 U.S. 580, 593, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973) (quoting Mishkin, 105 U.Pa.L.Rev. at 800) (establishing federal common law to fill in gaps under the Migratory Bird Conservation Act).

There are numerous Supreme Court decisions establishing federal common law where the Congressional statutory scheme is incomplete. *See, American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 569–70, 102 S.Ct. 1935, 1944–45, 72 L.Ed.2d 330 (1982), *reh'g denied* 458 U.S. 1116, 102 S.Ct. 3502, 73 L.Ed.2d 1379 (1982) (where court applied the common law doctrine of apparent authority within the context of antitrust litigation because that doctrine was "consistent with the Congressional intent to encourage competition"); *Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929) (noting that "the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object") (citing *Louis Pizitz Dry Goods Co. v. Yeldell,* 274 U.S. 112, 116, 47 S.Ct. 509, 510, 71 L.Ed. 952 (1927); *New York Central Railroad Co. v. White,* 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917); *Mountain Timber Co. v. Washington,* 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685 (1917); *Wilmington Mining Co. v. Fulton,* 205 U.S. 60, 74, 27 S.Ct. 412, 417, 51 L.Ed. 708 (1907)). *See also United States v. A & F Materials Co.,* 578 F.Supp. 1249, 1255 (S.D.

Ill.1984) ("The development of federal common law is appropriate to fill in the gaps of a federal statute.").

Here, federal common law arises as a function of long-held federal governance of Indian territories, and the statutory and constitutional scheme in place to further such governance. The United States government has set aside and held in trust certain lands for the benefit of Native Americans. The personal property involved in this dispute is located on property within the boundaries of these specially held trust lands. Under Pub.L. 280, Congress gave States the option to assert both criminal and civil jurisdiction over those trust lands.[5] The Supreme Court has recognized Indian Tribes' sovereign right to assert jurisdiction over such lands through tribal courts.[6] Additionally, Congress provided for the creation of C.F.R. courts in an effort to provide jurisdiction. Examining these many opportunities for assertion of jurisdiction, it is plain that Congressional intent was to construct a scheme whereby jurisdiction over trust lands was vested in one of several governmental entities. Congress did *not* intend there to be a vacuum, where no law held sway.

Thus, the Court may properly find that Congressional intent was quite clearly *not* the creation of a jurisdictional vacuum. This finding is consistent with the most fundamental principles upon which the nation rests. The United States of America is a government of law, not a government of men. Creation of trust properties for the benefit of Native Americans was not accomplished in contemplation that a jurisdictional vacuum would also result. Instead, Congress intended that there be continuous exercise of law. In the absence of the exercise of jurisdiction by the state courts, or the existence of C.F.R. or Tribal courts, there nevertheless exists a residue of federal common law which the judicial branch

---

**5.** 25 U.S.C. § 1324, 67 Stat. 588, 590 (1953).

**6.** In *Worcester v. Georgia,* the Supreme Court said that

"... the very fact of repeated treaties [between the Indians and the federal government] recognizes [the Indians' right to self government] and

the settled doctrine of the law of nations is that a weaker power does not surrender its independence—its right to self government—by associating with a stronger, and taking its protection." 31 U.S. (6 Pet.) 515, 559–61, 8 L.Ed. 483 (1832).

can recognize to fill the vacuum created by "the inevitable incompleteness presented by [this body of] legislation." *United States v. Little Lake Misere Land Co.*, 412 U.S. at 593, 93 S.Ct. at 2397.

Within the facts of this case, the Court may exercise one of two options. First, the Court can reject the opportunity to recognize a narrowly defined zone of federal common law. To do so however, in effect, creates a zone of civil lawlessness. *See supra* footnote 3.

Alternatively, under the limited and unique circumstances presented, the Court can recognize this narrowly defined zone of federal common law under which the Plaintiff correctly asserts a "substantial claim founded directly upon federal [common] law." *Mescalero Apache Tribe v. Martinez*, 519 F.2d at 481.

The United States Magistrate Judge thus finds as follows. It may be argued that to allow federal question jurisdiction based on federal common law to govern a contract between a Native American defendant and a non-Indian plaintiff necessarily converts federal courts "into small claims court[s] for all such disputes." *Gila River Indian Community v. Henningson, Durham & Richardson*, 626 F.2d 708 (9th Cir.1980). Such is *not* the holding recommended today. Federal court jurisdiction is appropriate in this case because of the unique facts presented. No Tribal court exists. No C.F.R. court exists. Oklahoma courts have failed and declined to assert jurisdiction over cases similar to the one presently at bar.

██ Where personal property, as here, is physically located in Indian country, beyond the reach of the state, and, where as here, the remedy sought by Plaintiff is foreclosure upon an alleged security interest in the property, exercise of federal jurisdiction, in the absence of other jurisdictional authority, is appropriate.[7] By Trea-

ty, Congress accorded to the Osage certain rights, including territorial imperatives. Those imperatives are preserved by further acts of Congress, creating a legislative scheme for limited self-governance of Indian territory. That scheme provides a mechanism for assertion of state-court-based civil jurisdiction. Such jurisdiction does not arise of right, but must be affirmatively embraced by the state. Here, Oklahoma has declined to embrace the Indian lands. In the absence of state-court-based civil jurisdiction Congress provided for creation of C.F.R. and Tribal courts. No such courts exist within the Osage Indian territories. Faced with the alternatives of acknowledging a "zone of civil lawlessness" or allowing "federal common law" to "interstitially" fill in the gaps in the Congressional schema, the United States Magistrate Judge finds that Congress intended there to be rule of law in such lands; and, where as here, property in which a security interest is asserted is physically located beyond the reach of the state court, and no other legislative court exists, jurisdiction is properly laid to rest at the feet of the federal court by reason of federal question jurisdiction achieved by recognition of the operation of federal common law.

To do otherwise is to acknowledge that property on Osage Indian lands is beyond the reach of any court. In effect, such a ruling allows an individual, whether he or she be a Native American or not, to seclude property from civil forfeiture, hiding behind the sweep of Congressional Acts (i.e., those Acts creating the Indian territories) while at the same time declaring the federal forum unavailable. Such a result is neither desired nor rational, using as it does, the federal act to shield Defendants from civil liability. Under these circumstances, and these circumstances only, federal court jurisdiction is proper in this forum. There is no Tenth Circuit Court of Appeals opinion which prohibits such a holding.[8]

---

**7.** This would clearly *not* be the result if Plaintiff did not claim a security interest in the personal property located within Indian territory. If Plaintiff only sought a personal judgment against Defendant, the rationale employed here

does not apply. Plaintiff would be able to prosecute his claim in state court.

**8.** *But see, Schantz v. White Lightning*, 502 F.2d 67 (8th Cir.1974), holding that federal courts

This recommendation supports the policy of the federal government to foster and encourage the rule of law and more particularly, contracts with Native Americans. If the Court were to hold otherwise, non-Indians may be loathe to enter into contracts with Native Americans for fear that the property in which there was a claimed security interest would be transported into Indian country, leaving the non-Indian without recourse.[9]

Therefore, the United States Magistrate Judge recommends that the Court find that jurisdiction is properly before this court and further recommends that the Defendants' *Motion to Vacate Default Judgment* be granted due to the defect in service. The undersigned further recommends that Defendants be given twenty (20) days in which to file their *Answer.*

Pursuant to Local Rule 32(D), parties are given ten (10) days from the above filing date to file any objections with supporting brief.

Dated this 15th day of March, 1991.

lacked jurisdiction even though state and tribal courts also lacked jurisdiction.

**9.** A further result may be creation of a zone where *anyone,* be he or she a Native American or not, could sequester property in which there is a security intent asserted, in an attempt to avoid attachment of same.